**Dorothy L. WINSLAR, Appellant,**

v.

**Donald BARTLETT, Appellee.**

**No. 5935.**

Court of Civil Appeals of Texas, Waco.

Nov. 9, 1978.

Rehearing Denied Nov. 30, 1978.

Andy J. McMullen, Steve Johnson, McMullen, Connally, Robertson, Jordan, Holliman & Campbell, Inc., Hamilton, for appellant.

Robert F. Salter, Gatesville, for appellee.

## OPINION

JAMES, Justice.

This is a suit by a landlord against his tenant for damages caused by the tenant to a rented apartment. Trial court judgment was in favor of the plaintiff landlord against the defendant tenant for $2239.00 plus interest and costs, from which the tenant appeals. We affirm.

Plaintiff-Appellee Donald Bartlett (the landlord) brought this suit against Defendant-Appellant Dorothy L. Winslar (the tenant) for damages to the apartment together with the furniture therein, allegedly caused by the wilful acts of defendant tenant.

At the trial before the court without a jury, Plaintiff Bartlett testified that he was the owner of an apartment located at 405 Main Street in the City of Gatesville, Coryell County, Texas; that at times material to this controversy Defendant Mrs. Winslar was the tenant who rented and was in possession of said apartment; that on October 3, 1977, while Defendant Mrs. Winslar was the occupant of said apartment, Plaintiff personally went with law enforcement officers to acquire control over the Defendant; that the peace officers had requested Plaintiff to accompany them; whereupon, when Plaintiff and the officers first knocked on the front door and then went to the back door, Defendant Mrs. Winslar shot through the back door of said apartment, wounding a policeman; that after Defendant had done such shooting, the officers threw tear gas into the apartment, and then entered the apartment and thereupon took possession of the person of the Defendant for the purpose of transporting her to the Austin State Hospital. Plaintiff further testified concerning the amounts spent by him in repairs and replacements, including amounts spent on new furniture, repainting the apartment, replacing all the carpeting in the apartment, and the expense of cleaning the air conditioner therein. The damages to the apartment were caused by the tear gas, plus the expense to repair the back door and lock caused by Defendant's shooting.

Mr. Barlettt testified that the actions of the police officers appeared logical to him, including the use of tear gas, in their efforts to get Mrs. Winslar out of the apartment, especially in view of Mrs. Winslar having shot through the door and having wounded the policeman.

With reference to the damages, Plaintiff Barlett showed an estimate from Dixon Lumber Company for $1850.00 for the materials necessary to put the apartment in substantially the condition it was in before such damage occurred; that he actually spent said amount for such materials and personally performed the labor himself; that in addition thereto he paid $674.00 for

new furniture to replace the damaged furniture, against which he was allowed a credit for $264.00 for the damaged furniture as salvage, making a net cash outlay by him of $410.00 for the new furniture used to replace the damaged furniture. From this testimony we see that Barlett's proof showed he suffered out-of-pocket expense of $2260.00 with no claim having been asserted by him for his own labor, for which the trial court awarded him judgment for $2239.00.

Mrs. Winslar did not dispute any of the expense testified to by Plaintiff, nor the necessity therefor nor the reasonableness thereof. She did testify that any damage to Plaintiff's apartment had taken place at a time prior to her taking occupancy of said apartment. She testified that she had passed by said apartment sometime prior to her moving in and had witnessed a scene which was apparently exactly like the incident for which she was being sued. Plaintiff Bartlett then denied that any such incident had taken place prior to the time Defendant first occupied the apartment.

Defendant-Appellant asserts error of the trial court in proceeding to trial after granting Defendant-Appellant's Attorney's Motion to Withdraw and asserts the trial court was put on notice of such facts as should have caused the court to inquire into Defendant-Appellant's mental competency. We overrule these contentions.

■ This case was originally filed by Plaintiff Bartlett on November 2, 1977. Thereafter, on December 2, 1977, Defendant Mrs. Winslar filed an answer by and through her attorney, to wit, John D. Wooddell. Said attorney represented Mrs. Winslar in this cause until some time prior to March 17, 1978. At some time prior to March 17, 1978, Mrs. Winslar filed a complaint with the State Bar Grievance Committee of Travis County, Texas, concerning Mr. Wooddell and his representation of her, which complaint prompted Mr. Wooddell to file a Motion to Withdraw as her Counsel in the case at bar.

The trial court set a hearing on the merits as well as to consider Mr. Wooddell's Motion to Withdraw as Counsel for March 17, 1978, and Defendant-Appellant Mrs. Winslar was notified of such setting and appeared in her own behalf. At said hearing she announced to the court that she had previously made complaint to the State Bar Grievance Committee against Lawyer Wooddell; whereupon the trial court determined not to grant the Motion to Withdraw until the court had communication with Mr. Wooddell; and in addition, the trial court reset the case for trial for March 31, 1978, stating that the court would dispose of the Motion to Withdraw at that time. The case was again called for trial on March 31, 1978, at which time Defendant-Appellant Mrs. Winslar again appeared pro se; and at said hearing the trial court announced to her that it was granting Lawyer Wooddell's Motion to Withdraw and on said occasion the court asked Mrs. Winslar if she understood that she was representing herself before the court in this case, to which question she answered, "Yes, sir." The court then proceeded to try the case on the merits.

Said appearance before the trial court on March 31, 1978, was the second pro se appearance by the Defendant-Appellant. Since she had filed a complaint against her lawyer with the Grievance Committee prior to March 17, 1978, and her lawyer had already filed his Motion to Withdraw prior to March 17, 1978, Defendant-Appellant Mrs. Winslar either knew or should have known at the hearing on March 17, 1978, that if she wanted a lawyer to represent her that she needed to get busy and hire another lawyer. The trial court gave her two additional weeks to enable her to secure other counsel by resetting the case to March 31, 1978. At the trial hearing on March 31, 1978, there was no statement or suggestion by Mrs. Winslar that she needed additional time to secure another lawyer or to make additional preparation for trial. In other words, it was Defendant-Appellant's own action, to wit, the filing of the complaint against her lawyer, that forced an end to her erstwhile attorney-client relationship. In this state of the record we cannot say

the trial court abused its discretion in proceeding to trial on the merits on March 31, 1978.

■ Defendant-Appellant further contends the trial court was put on notice of facts that should have caused the court to institute an inquiry into the competency of the Defendant-Appellant to conduct a pro se representation in these proceedings. We overrule this contention. Appellant argues that since Plaintiff's Original Petition alleged that Defendant Mrs. Winslar "may be served with citation in this cause at the Austin State Hospital, Austin, Travis County, Texas," that the trial court was put on notice that Mrs. Winslar might be mentally incompetent; moreover, that on the occasion wherein the damages sued for occurred, the law enforcement officers were attempting to gain control over her person to take her to the Austin State Hospital.

■ Appellant further contends the trial court erred in not taking judicial notice of any mental incompetency proceedings wherein Mrs. Winslar may have been committed as a patient to the Austin State Hospital. The record is silent as to any such proceedings; however, if there were any such proceedings, they would not be on file in the District Court of Coryell County, which is the trial court in the case at bar. Such mental illness proceedings, if any there were, would have been of necessity on file in a county court as opposed to a district court. In this state of the record, the trial court was not empowered to take judicial notice of proceedings on file in a court other than its own. *Culver v. Pickens* (Tex. 1943) 142 Tex. 87, 176 S.W.2d 167, 171; also see 23 Tex.Jur.2d "Evidence," par. 26, pp. 45, 46, and the cases therein cited.

As stated, there is nothing in the record concerning any mental incompetency proceedings dealing with Mrs. Winslar. It is true that Mrs. Winslar was served with citation (in the case at bar) while she was in the Austin State Hospital; however, it is clear that at the times of the trial court's hearings on March 17, 1978, and March 31, 1978, Mrs. Winslar was free from any control by the Austin State Hospital. She made voluntary appearances before the trial court on both occasions. Article 5547–81(b), Vernon's Texas Civil Statutes, a part of the Mental Health Code, provides:

"The discharge of a patient who has been found to be mentally incompetent terminates the presumption that he is mentally incompetent."

At the trial on the merits, Mrs. Winslar answered the questions propounded to her, and made statements to the court, in a coherent manner. Under the record before us, we consider it far-fetched to say that the trial court erred in not conducting an inquiry into the mental competency of Mrs. Winslar. Appellant's points of error in this regard are accordingly overruled.

Defendant-Appellant further contends, that the evidence is legally and factually insufficient to support the trial court's judgment, and the wrong measure of damages was employed concerning Plaintiff-Appellee's furniture, carpeting, wall paint, and air conditioner. We overrule these contentions.

■■ Plaintiff Bartlett testified that after the damage occurred, he replaced the back door of the apartment, repainted the entire apartment, had the air conditioning unit cleaned, and replaced all of the furniture and carpeting in the apartment. His testimony further showed his out-of-pocket expense in restoring the apartment substantially to its condition immediately prior to the time the damages occurred, with no recovery being asserted or allowed for his own labor. The trial court's judgment allowed Plaintiff recovery based upon the reasonable and necessary costs of such replacements and repairs to restore the apartment and the furniture contained therein to its condition immediately prior to the time the damages occurred. This being so, the Plaintiff's proof and the trial court's judgment were based upon a proper measure of damages. See *Pasadena State Bank v. Isaac* (Tex.1950) 149 Tex. 47, 228 S.W.2d 127, 128, dealing with damage to personal property; *Stafford v. Thornton* (Amarillo CA 1967) 420 S.W.2d 153, 160, NRE, dealing

with repairable injury to a building; 17 Tex.Jur.2d, "Damages," par. 69, pp. 144 et seq. and the cases therein cited, dealing with repairable injury to real estate. Moreover, we find the evidence to be both legally and factually sufficient to support the trial court's implied findings which underlie the trial court's judgment.

Appellant has other points and contentions, all of which we have carefully considered, and have overruled all of the same as being without merit.

Judgment of the trial court is accordingly affirmed.

AFFIRMED.