**Opinion filed January 31, 2020**



**In The**

# Eleventh Court of Appeals

_____

## No. 11-18-00017-CV

_____

**CAROLYN CASH BARTEE, Appellant**

**V.**

**BILLY JACK BARTEE, Appellee**

**On Appeal from the 259th District Court**

**Shackelford County, Texas**

**Trial Court Cause No. 2016-038**

### M E M O R A N D U M   O P I N I O N

This appeal arises from a divorce proceeding instituted by Billy Jack Bartee[1] against Carolyn Cash Bartee. At trial, Billy and Carolyn represented to the trial court that they had reached a settlement agreement, and Billy's attorney recited the agreement into the record. The trial court divided the parties' property and signed a final decree of divorce. In five issues, Carolyn complains that the trial court erred

---

[1]Billy Jack Bartee died on June 16, 2018, while this case was on appeal. Pursuant to Rule 7.1(a)(1) of the Texas Rules of Appellate Procedure, we will proceed to adjudicate the appeal as if Billy were still alive and will identify Billy as the appellee. *See* TEX. R. APP. P. 7.1(a)(1).

when it failed to enter findings of fact and conclusions of law, "allow[ed]" her to enter into a settlement agreement after it had impliedly found that she lacked the capacity to do so, signed a final decree of divorce that was erroneous on its face and that did not reflect the parties' agreement, and denied her second motion for new trial. We affirm the trial court's judgment.

On May 26, 2016, Billy filed for divorce from Carolyn. Carolyn answered and filed a counterpetition on June 15, 2016. The record does not reflect that any other pleadings were filed in the case until March 20, 2017, when Carolyn's trial counsel, David Wimberley, filed a motion to withdraw and a motion for appointment of an attorney ad litem to assist Carolyn.

In the motion to withdraw, Wimberley stated that Carolyn no longer wished to retain his services and wished to represent herself. Wimberley expressed concern that Carolyn was not competent to make any decisions "in this matter at this time" and noted that he had filed a formal request for the appointment of an "Attorney Ad Litem" for Carolyn. Wimberley told the trial court that he believed that Carolyn lacked the capacity to either object or consent to the motion to withdraw. He also noted that he was concerned that Carolyn's failure to cooperate in the case was "due to her lack of physical and mental capacity."

In his motion to appoint an attorney ad litem to represent Carolyn, Wimberley stated that it was in Carolyn's best interest to appoint "an attorney ad litem to provide legal services" because Carolyn was not mentally or physically capable of representing herself, lacked capacity to do so, was possibly incompetent, and had demanded that he resign. Wimberley noted that Carolyn and her daughter had refused to hire other counsel "due to irrational beliefs that must be addressed by the Court." Wimberley asserted that it was necessary to immediately appoint an attorney ad litem to assist Carolyn because a final hearing on the dissolution of the

2

marriage had been scheduled for May 11, 2017, and substantial assets were at risk of being lost.

On March 23, 2017, the trial court appointed Michael L. Parker as attorney ad litem for Carolyn. There is nothing in the record to reflect that the trial court held a hearing before it appointed Parker.

The trial court heard Wimberley's motion to withdraw on May 1, 2017. At the hearing, Wimberley explained that Carolyn had requested that he file the motion to withdraw but that he had reservations about withdrawing before Carolyn had retained other counsel. Wimberley noted that Carolyn had serious medical conditions and that he was not sure of her mental status. Wimberley indicated that he had advised Carolyn to retain another attorney but that she had refused to do so. Wimberley stated that he had contacted realtors to determine the value of the property at issue and had received a settlement offer of $200,000, which was "in line" with the appraisals of the property.

Wimberley indicated that he had attempted to communicate with Carolyn and her daughter about the settlement offer but that they did not claim the certified letters that he had sent to them. They had also terminated the telephone calls that he had made to them. Carolyn and her daughter did not like what Wimberley "had to tell them" because they believed that the property at issue was worth between $600,000 and $1,000,000. Wimberley indicated that, before he sought to withdraw, he had a duty to make sure that Carolyn was competent and that she had someone qualified to assist her in making decisions in a matter that involved "in excess of $200,000."

Parker explained to the trial court that he had a potential conflict of interest that prevented him from further involvement in the case and that he had disclosed that potential conflict to Carolyn. Parker informed the trial court that, based upon his conversations with Carolyn and her daughter, Carolyn believed that there had been a lack of communication with Wimberley, that the value of the real property

3

was the main issue in the case, and that Carolyn wanted to obtain new counsel. Parker expressed no opinion about Carolyn's competence or capacity.

The trial court permitted Wimberley to withdraw as counsel. The trial court also found that "there is a conflict of [interest] moving forward from this point for the ad litem and I'm really unclear as to whether that is necessary." The trial court then removed Parker as Carolyn's attorney ad litem and did not appoint substitute ad litem counsel.

The trial court addressed Carolyn directly and advised her to employ new counsel within two weeks. Carolyn asked whether her daughter could represent her under a power of attorney. The trial court informed Carolyn that the power of attorney did not give Carolyn's daughter "standing as a lawyer in court." Carolyn told the trial court that she understood. Carolyn also indicated that she understood that Wimberley was no longer her attorney.

Carolyn complained that she had "a little bit different story" than Wimberley on the communication issue. Carolyn informed the trial court that she had last spoken with Wimberley in October, that Wimberley was never available when she called, and that he never returned her phone calls. She also denied that she had received any appraisals or any information that explained how the money that she had paid to Wimberley had been spent. The trial court provided Carolyn with information on how she could file a grievance with the State Bar of Texas and explained that her concerns about Wimberley's representation would need to be addressed in another forum. When the trial court asked Carolyn if she had anything else she wished to address, she answered: "That's it."

At the final divorce hearing on July 13, 2017, David Thedford appeared as Carolyn's attorney. Billy's attorney, Robert McCool, represented to the trial court that the parties had reached an agreement. Both Billy and Carolyn testified that they were aware of the agreement and knew "what's going to be in it." McCool then

4

recited into the record that Billy would pay Carolyn $110,000 and that Billy would receive all property that belonged to either him or Carolyn. McCool specifically stated that Billy would receive a farm of approximately 165 acres, another tract of land, a promissory note, cattle, and all of the personal items in his possession. Thedford confirmed that those were the terms of the parties' agreement. Billy and Carolyn each indicated that that was their understanding as well.

The trial court advised Billy and Carolyn that it would accept the agreement as stated on the record, clarified that the agreement had become enforceable, and explained:

> There is no, "Hey, I don't want to do that. I'm not going to sign this. I refuse to do this. This is not what I wanted to do. I was forced to do that." None of that is on the table.

The trial court inquired as to whether Billy wanted the trial court to accept and enter the agreement, and Billy stated: "I approve." The trial court then asked Carolyn whether she accepted the agreement, and she answered: "Yes." The trial court declared: "[T]hat will be the Court's order. . . . [I]f you will forward it along we will take care of it." The trial court noted on its docket sheet:

> Divorce granted – [Billy] pay [Carolyn] – $110,000 @ [signing] of final decree; [Billy] awarded all property (168 acres, note from Nettles, cattle 30 head).

On July 31, 2017, the trial court signed the final decree of divorce. In the final decree, the trial court specified that "[t]his divorce [was] judicially PRONOUNCED AND RENDERED in court . . . on July 13, 2017 and further noted on the court's docket sheet on the same date, but signed on 31 July 2017." Further, in the final decree, the trial court awarded Billy two tracts of land, all cattle and personal property in his possession, and the Nettles note. The trial court awarded Carolyn $110,000, payable when the decree of divorce was entered, and all personal property

5

in her possession. Billy and Thedford signed the final divorce decree, and McCool provided an electronic signature. Carolyn did not sign the final decree.

On August 30, 2017, Carolyn filed a combined motion for new trial, motion to reopen the evidence, and motion for nunc pro tunc. In the motion for new trial, Carolyn asserted that she was incompetent and without the mental capacity to "enter into an agreement" without an appointed guardian or ad litem. Carolyn also claimed that there was error apparent on the face of the divorce decree because the decree contained a statement that she had signed the decree when she had not done so. Carolyn also requested that the trial court grant a new trial in order to divide property that had not been divided in the parties' agreement.

The trial court considered Carolyn's combined motion on October 3, 2017. On October 17, 2017, the trial court issued a written "Order on Motion for New Trial" (the October 17 Order).[2] The trial court denied Carolyn's motions for new trial and to reopen the evidence. The trial court granted Carolyn's motion for nunc pro tunc relief and "ORDERED AND DECREED" that paragraph P-1 of the final divorce decree, which was attached as Exhibit A to the order, would be amended to reflect the correct address of one of the tracts of real property awarded to Billy. The trial court also found that property that belonged to Billy and Carolyn had not been divided. The trial court "ORDERED AND DECREED" that the final divorce decree was amended to reflect that Carolyn was awarded "the reserved life estates of the parties to the property the parties granted to The Bartee Trust of 5/2/2001 by special warranty deed dated May 2, 2001."

---

[2]Although dated October 17, 2017, the order was filemarked on October 13, 2017. Carolyn's first motion for new trial would have been overruled by operation of law on October 16, 2017. *See* TEX. R. CIV. P. 329b(c) (motion for new trial is considered overruled by operation of law if not determined by written order within seventy-five days after the judgment was signed); TEX. R. CIV. P. 4 (when last day of time period falls on a Saturday, Sunday, or legal holiday, the period runs until the end of the next day that is not a Saturday, Sunday, or legal holiday). However, the trial court still retained plenary power to modify the final divorce decree on October 17, 2017. *See* TEX. R. CIV. P. 329b(e) (trial court's plenary power expires thirty days after motion for new trial is overruled).

6

On November 6, 2017, Carolyn requested that the trial court issue written findings of fact and conclusions of law with respect to the final decree signed on July 31, 2017, as amended. On November 16, 2017, Carolyn filed a second combined motion for new trial and motion to reopen evidence, in which she again complained that she was incompetent to reach an agreement and that she had not agreed to the final divorce decree. The trial court declined to hold a hearing on Carolyn's motion, and the second motion for new trial was overruled by operation of law. On November 28, 2017, Carolyn filed a notice of past due findings of fact and conclusions of law. *See* TEX. R. CIV. P. 297. The trial court did not enter any findings of fact or conclusions of law.

Billy argues that we lack jurisdiction over this appeal because the notice of appeal was untimely. Billy specifically asserts that there can be only one final judgment; that the trial court orally rendered judgment on July 13, 2017, and ministerially signed the judgment on July 31, 2017; that the October 17 Order did not modify the judgment; that Carolyn was required to file her notice of appeal by October 29, 2017; and that Carolyn did not file a notice of appeal until January 15, 2018.

Absent a timely filed notice of appeal, a court of appeals does not have jurisdiction to consider the merits of an appeal. *Wilkins v. Methodist Health Care Sys.*, 160 S.W.3d 559, 564 (Tex. 2005). Generally, a party must file a notice of appeal within thirty days after the judgment is signed. TEX. R. APP. P. 25.1(b), 26.1; *In re R.R.K.*, No. 18-0273, 2019 WL 6825953, at *2 (Tex. Dec. 13, 2019). That deadline is extended to ninety days when certain postjudgment motions are filed within thirty days after judgment. TEX. R. APP. P. 26.1(a); *In re R.R.K.*, 2019 WL 6825953, at *2. A timely motion for new trial or motion to modify the judgment will extend the appellate timeline. TEX. R. APP. P. 26.1(a)(1)–(2); *Brighton v. Koss*, 415 S.W.3d 864, 866 (Tex. 2013) (per curiam).

7

On August 30, 2017, thirty days after the trial court signed the final divorce decree on July 31, 2017, Carolyn timely filed her motion for new trial and motion to reopen the evidence. Carolyn also requested that the trial court divide property that was not subject to the parties' settlement agreement. Both of the motions extended the time for Carolyn to file a notice of appeal until October 29, 2017.

In the October 17 Order, the trial court denied Carolyn's motion for new trial and motion to reopen the evidence, but found that certain property owned by Billy and Carolyn had not been divided and amended the final divorce decree to reflect that the undivided property was awarded to Carolyn. The trial court also granted Carolyn's motion for nunc pro tunc and clarified the address of certain real property awarded to Billy. These modifications to the final divorce decree restarted the appellate timetable. *See* TEX. R. CIV. P. 329b(h) (providing that the appellate timetable restarts when a trial court modifies, corrects, or reforms the judgment in any respect); *Arkoma Basin Expl. Co. v. FMF Assocs. 1990-A, Ltd.*, 249 S.W.3d 380, 390–91 (Tex. 2008) (noting that, because appellate "deadlines are restarted by '*any* change, whether or not material or substantial,'" an order in which the court suggests remittitur restarts the deadlines (quoting *Check v. Mitchell*, 758 S.W.2d 755, 756 (Tex. 1988) (per curiam))).

On November 16, 2017, Carolyn timely filed her second motion for new trial and motion to reopen evidence, which extended the deadline to file a notice of appeal until January 16, 2018. *See* TEX. R. APP. P. 4.1(a), 26.1(1). Carolyn timely filed her notice of appeal on January 16, 2018, and we therefore have jurisdiction over this appeal.

Carolyn argued for the first time during oral argument that, due to Billy's death, we should reverse the decree of divorce and remand the case to the trial court for dismissal. Because a "cause of action for a divorce is purely personal," *Janner v. Richardson*, 414 S.W.3d 857, 858 (Tex. App.—Houston [1st Dist.] 2013, no pet.)

8

(quoting *Garrison v. Tex. Commerce Bank*, 560 S.W.2d 451, 453 (Tex. App.—Houston [1st Dist.] 1977, writ ref'd n.r.e.)), the death of one of the parties prior to the rendition of judgment abates the divorce action and its incidental inquiries of property rights and child custody, *Whatley v. Bacon*, 649 S.W.2d 297, 299 (Tex. 1983) (orig. proceeding); *Pollard v. Pollard*, 316 S.W.3d 246, 251 (Tex. App.—Dallas 2010, no pet.). "The proper procedural disposition of a divorce action when one of the parties dies is dismissal." *Whatley*, 649 S.W.2d at 299.

However, when the trial court has rendered a divorce decree, the death of one of the parties does not automatically require abatement and dismissal of either an appeal or further actions by the trial court. *Dunn v. Dunn*, 439 S.W.2d 830, 833–34 (Tex. 1969); *Palomino v. Palomino*, 960 S.W.2d 899, 901 (Tex. App.—El Paso 1997, pet. denied). Specifically, when a party to a divorce dies during the pendency of an appeal, the merits of the appeal can be adjudicated if the divorce decree affects property rights of the parties. *Dunn*, 439 S.W.2d at 833–34. In this case, the divorce decree affects the property rights of the parties, and Billy's death, therefore, does not deprive us of jurisdiction over this appeal. We hold that we have jurisdiction to address the merits of this appeal.

In her first issue, Carolyn argues that the trial court erred when it failed to enter findings of fact and conclusions of law. Within twenty days after a judgment is signed, a party may file a request that the court enter written findings of fact and conclusions of law. TEX. R. CIV. P. 296. The Texas Family Code also specifies that, in a suit for the dissolution of a marriage in which the court has rendered a judgment in which it divides the estate of the parties, on request by a party, the trial court must state in writing its findings of fact and conclusions of law, including "the characterization and value of all assets, liabilities, claims, and offsets on which disputed evidence has been presented." TEX. FAM. CODE ANN. § 6.711 (West Supp. 2019). However, findings of fact are unnecessary when facts are undisputed. *Ad*

9

*Villarai, LLC v. Chan Il Pak*, 519 S.W.3d 132, 135 (Tex. 2017) (per curiam) (citing *Barker v. Eckman*, 213 S.W.3d 306, 310 (Tex. 2006)).

At the final hearing in this case, the parties' agreement as to the division of the marital property was recited into the record. There was no evidence as to the characterization or value of any property. Further, at the hearing, neither party nor their counsel voiced any objection to the divorce or to the terms of the property division agreement. Because there were no disputed matters in question before it, the trial court was not required to enter findings of fact and conclusions of law as to the characterization and value of the parties' property. *See id.*

In her first motion for new trial, Carolyn raised issues that pertained to her capacity to enter into the settlement agreement, to her agreement to the final decree of divorce, and to property that had not been divided by the trial court. There is no record of an evidentiary hearing held by the trial court on these issues. After the hearing, the trial court signed the October 17 Order in which it amended the final divorce decree to award undivided property to Carolyn. Carolyn filed a second motion for new trial in which she again raised issues about her competence and her agreement to the final divorce decree. The trial court did not hold a hearing on the second motion for new trial. Without an evidentiary hearing, the trial court was not required to make findings of fact and conclusions of law as to the issues raised by Carolyn in the two motions for new trial. *IKB Indus. v. Pro-Line Corp.*, 938 S.W.2d 440, 443 (Tex. 1997) (noting that findings of fact and conclusions of law "can have no purpose and should not be requested, made, or considered on appeal" from any judgment rendered without an evidentiary hearing).

We hold that Carolyn has not demonstrated that the trial court erred when it failed to make findings of fact and conclusions of law. We overrule Carolyn's first issue.

In her second issue, Carolyn complains that the trial court abused its discretion when it allowed her to enter into an "alleged agreement" after it had impliedly found that she "lacked capacity" to do so. Carolyn also argues that the evidence is legally and factually insufficient "to support the trial court's actions."

In family law cases, the traditional sufficiency standard of review overlaps the abuse of discretion standard of review. *Moore v. Moore*, 568 S.W.3d 725, 729 (Tex. App.—Eastland 2019, no pet.). Consequently, assertions of legal and factual insufficiency are not independent grounds of error but, rather, are factors used in our determination of whether the trial court abused its discretion. *Id.* To determine whether there has been an abuse of discretion, we consider whether the trial court had sufficient evidence upon which to exercise its discretion and, if so, whether it erred in its application of that discretion. *In re A.J.E.*, 372 S.W.3d 696, 698–99 (Tex. App.—Eastland 2012, no pet.). The sufficiency review is part of the first inquiry. *Id.* at 699. After we assess the evidence, we consider whether, based on that evidence, the trial court made a reasonable decision. *Id.* The trial court does not abuse its discretion so long as the record contains some evidence of substantive and probative character to support its decision. *Id.*

The test for legal sufficiency is whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). When we conduct a legal sufficiency review, we consider the evidence in the light most favorable to the verdict and indulge every reasonable inference to support it. *Id.* at 822. We must credit favorable evidence if a reasonable juror could and disregard contrary evidence unless a reasonable juror could not. *Id.* at 827. When we evaluate a factual sufficiency challenge, we consider and weigh all the evidence in a neutral light and will set aside the finding only if the evidence is so weak or the finding is so against

11

the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986).

The factfinder is the sole judge of the weight and credibility of the witnesses' testimony. *City of Keller*, 168 S.W.3d at 819; *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). When there is conflicting evidence, the factfinder may believe one witness and disbelieve others. *City of Keller*, 168 S.W.3d at 819; *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986). The factfinder may also draw inferences from the facts and choose between conflicting inferences. *Ramo, Inc. v. English*, 500 S.W.2d 461, 467 (Tex. 1973). We will not overturn a factfinder's determination unless only one inference can be drawn from the evidence. *City of Keller*, 168 S.W.3d at 822.

"The law presumes a party to be mentally competent and places the burden of proving incompetence on the party alleging it." *Estate of Riefler*, 540 S.W.3d 626, 635 (Tex. App.—Amarillo 2017, no pet.) (citing *Hall v. Hall*, 352 S.W.2d 765, 767 (Tex. App.—Houston 1962, no writ)). A person has the mental capacity to contract if, at the time of contracting, the person "appreciated the effect of what [she] was doing and understood the nature and consequences of [her] acts and the business [she] was transacting." *Id.* at 636 (quoting *Mandell & Wright v. Thomas*, 441 S.W.2d 841, 845 (Tex. 1969)). Circumstantial evidence—such as the conduct of the party in question, circumstances tending to produce a particular mental condition, and prior or subsequent existence of a mental condition from which a party's capacity or incapacity at the time in question may be inferred—may be relevant to prove capacity or lack of capacity. *Id.* (citing *In re Estate of Robinson*, 140 S.W.3d 782, 793 (Tex. App.—Corpus Christi–Edinburg 2004, pet. denied)). The question of whether a person, at the time of contracting, knows or understands the nature and consequences of his actions is generally a question of fact for the factfinder. *Id.*

12

(citing *Fox v. Lewis*, 344 S.W.2d 731, 739 (Tex. App.—Austin 1961, writ ref'd n.r.e.)).

Carolyn argues that the trial court made an implied finding that she was incompetent when it appointed Parker as her attorney ad litem. However, the record establishes only that, three days after Wimberley filed the motion for appointment of an attorney ad litem, the trial court signed the order that was attached to Wimberley's motion and appointed Parker as attorney ad litem for Carolyn. The record does not reflect that the trial court either held a hearing on Wimberley's motion or examined Carolyn before it signed the order.

We, therefore, turn to the question of whether the trial court abused its discretion when it failed to find that Carolyn lacked capacity to agree to the settlement. We agree with Carolyn that Wimberley's statement in the motion for the appointment of an attorney ad litem that he believed that Carolyn was mentally incompetent or incapacitated is circumstantial evidence that may be relevant to prove Carolyn's capacity or lack of capacity. However, based on Wimberley's statements at the hearing on the motion to withdraw, it is clear that his concerns were that Carolyn had failed to retain new counsel, that he had been unable to communicate effectively with Carolyn, and that Carolyn's belief that the marital property was worth much more than the appraised amount would impact her decision on the proposed settlement.

Parker represented to the trial court that he had spoken with Carolyn and that her communication with Wimberley was an issue. Parker did not indicate that he had any concerns with Carolyn's mental capacity. The trial court removed Parker as Carolyn's ad litem due to a conflict and then commented that it was not clear that an ad litem was necessary. The trial court then discussed with Carolyn the fact that Wimberley was no longer her attorney, that she needed to hire an attorney, and that the trial court in this case was not the proper forum in which to complain about

Wimberley's representation. Carolyn responded clearly and appropriately to the trial court's questions.

At the final hearing, Thedford, who was Carolyn's new counsel, did not express any concerns about Carolyn's competency or capacity. After the settlement agreement was recited into the record, the trial court questioned Carolyn about the settlement and about whether she agreed with its terms. Again, the trial court was able to observe Carolyn and determine if there was any question of her competency to agree to the terms.

In response to Carolyn's first motion for new trial, Billy filed an October 2, 2017 affidavit from Wimberley. Wimberley averred that he sought to withdraw from the case because of Carolyn's failure to communicate and refusal to obtain new counsel. Wimberley was aware of Carolyn's medical problems when he filed "a motion" but was not sure about her mental status. After he spoke with Carolyn, he determined that there was no basis to seek a referral to the probate court for a competency determination. Rather, the issues that he had with Carolyn were due to their inability to communicate. Wimberley noted that Carolyn "obviously understood what I was telling her and she understood the May 1, 2017 proceedings."[3]

Carolyn attached the November 16, 2017 affidavit of her daughter, Ruth Ellen Cash, to her second motion for new trial. In her affidavit, Cash stated that Carolyn executed a durable power of attorney on September 28, 2016, that allowed Cash to handle Carolyn's affairs. According to Cash, Carolyn suffered from dementia and was unable to recall important things. Cash did not state that Carolyn lacked capacity to understand and enter into the settlement agreement on July 13, 2017.

---

[3]Carolyn asserts that we may not consider Wimberley's affidavit because it is inconsistent with the motion for appointment of an attorney ad litem. However, viewed in light of Wimberley's statements at the hearing on the motion to withdraw, the affidavit is not clearly inconsistent with the motion. Further, the trial court, as the factfinder, was permitted to resolve inconsistencies in the testimony of any witness. *City of Keller*, 168 S.W.3d at 819; *McGalliard*, 722 S.W.2d at 697.

There is no evidence that Carolyn was ever declared by a doctor, or adjudicated by a court, to be either mentally incompetent or lacking capacity to contract. Further, the record does not reflect that the trial court, or any court for that matter, made a finding that Carolyn lacked capacity to enter into the settlement agreement. Rather, the record reflects that, at the time that the settlement agreement was recited into the record, Carolyn appreciated the effect of what she was doing and understood the nature and consequences of her acts as well as the business that she was transacting. *See Riefler*, 540 S.W.3d at 635; *Winslar v. Bartlett*, 573 S.W.2d 608, 611 (Tex. App.—Waco 1978, no writ) (holding that a party who was free from the control of a mental institution and made voluntary appearances before the trial court was presumed to be mentally competent and that the trial court did not err in failing to conduct an inquiry into the party's mental competency where the record was silent regarding any mental incompetency proceedings and the party had answered questions and made statements to the court in a coherent manner during trial). Carolyn, therefore, has failed to satisfy her burden to overcome the presumption that she was mentally competent to agree to the settlement agreement.

We hold that the trial court had sufficient evidence upon which to exercise its discretion to approve the settlement agreement and did not err in its application of that discretion. *See In re A.J.E.*, 372 S.W.3d at 698–99. Consequently, the settlement agreement and decree of divorce are not void on the basis of Carolyn's alleged incapacity or incompetency. We overrule Carolyn's second issue.

In her third issue, Carolyn argues that the final decree of divorce "has error on its face" because, although the decree states that it was signed by both parties, she did not sign the decree. Carolyn asserts that, without her signature, "the terms of the final decree of divorce are not satisfied" and the decree cannot be "an agreed decree of divorce." Carolyn finally contends that, because she did not sign the final decree of divorce, she effectively revoked her consent to the settlement agreement.

15

Carolyn first argues that there is "error on the face of the record" and that the final divorce decree cannot be an "agreed decree" because the decree states that Carolyn signed the decree when she had not done so. Pursuant to Rule 11 of the Texas Rules of Civil Procedure, unless otherwise provided in the Rules of Civil Procedure, "no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record." TEX. R. CIV. P. 11. Under Rule 11, an agreed property division constitutes an enforceable consent judgment—even if neither party signed the agreement—if the agreement is "made in open court and entered of record." *Hahne v. Hahne*, 663 S.W.2d 77, 79 (Tex. App.—Houston [14th Dist.] 1983, no writ). Therefore, when the parties' agreement is evidenced by a party's attorney reciting the terms of the agreement to the court and the party confirming those terms, the agreement need not be in writing or signed. *Id.*

It is undisputed that Carolyn acquiesced to the settlement agreement at the July 13, 2017 hearing, and we have rejected her argument that she lacked capacity to do so. Therefore, it was not necessary for Carolyn to sign the final divorce decree in order for it to be an agreed decree. *See id.*; *see also Lowery v. Lowery*, No. 01-16-00147-CV, 2017 WL 6520428, at *3 (Tex. App.—Houston [1st Dist.] Dec. 21, 2017, no pet.) (mem. op.) (concluding that parties entered into an agreed divorce decree even though both parties did not sign the decree).[4]

Carolyn next argues that the trial court erred when it signed the final divorce decree because she had revoked her consent to the agreement. Although a party may

---

[4]We also note that Thedford, Carolyn's attorney, signed the final divorce decree. *See Gavenda v. Strata Energy, Inc.*, 705 S.W.2d 690, 693 (Tex. 1986) (recognizing that the attorney–client relationship is an agency relationship and that the attorney's acts and omissions within the scope of his or her employment are regarded as the client's acts); *In re R.B.*, 225 S.W.3d 798, 803 (Tex. App.—Fort Worth 2007, no pet.) (declaring that an attorney may execute an enforceable Rule 11 agreement on his client's behalf).

have consented to an agreement, a consent judgment cannot be rendered when the party does not consent at the time judgment actually is rendered. *Chisholm v. Chisholm*, 209 S.W.3d 96, 98 (Tex. 2006) (per curiam). A party may revoke consent at any time before judgment is rendered. *S & A Rest. Corp. v. Leal*, 892 S.W.2d 855, 857 (Tex. 1995). A party's revocation of consent must be made known to the trial court. *Miller v. Miller*, 721 S.W.2d 842, 844 (Tex. 1986). A judgment that is rendered after one of the parties revokes her consent is void. *Leal*, 892 S.W.2d at 857.

Billy argues that the trial court orally rendered judgment at the July 13, 2017 hearing and that, therefore, Carolyn could not revoke her consent to the agreement. Carolyn, however, asserts that the trial court did not render judgment until it signed the final divorce decree on July 31, 2017. We need not resolve this dispute because the record does not reflect that Carolyn withdrew her consent to the settlement agreement before the trial court signed the final divorce decree.

Carolyn asserts that her failure to sign the final divorce decree is evidence that she had withdrawn her consent to the agreement. However, Carolyn's failure to sign the divorce decree was not sufficient to inform the trial court that Carolyn had withdrawn her consent to the settlement agreement. *See Westmoreland v. AIA Holdings Inc.*, No. 10-18-00208-CV, 2020 WL 103807, at *1–2 (Tex. App.—Waco Jan. 8, 2020, no pet. h.) (mem. op.) (rejecting argument that party's failure to sign judgment constituted notice of revocation of consent to settlement agreement when party's attorney had signed the agreement and the trial court did not have notice that the party had withdrawn her consent). Carolyn did not object to the entry of the final divorce decree before it was signed or otherwise notify the trial court that she had withdrawn her consent to the agreement. *See Miller*, 721 S.W.2d at 844; *Clanin v. Clanin*, 918 S.W.2d 673, 677 (Tex. App.—Fort Worth 1996, no writ) (concluding that, where record does not show that a party objected to or made known to the trial

17

court that he was withdrawing his consent to the agreement that was announced in court and read into the record, the party's post-rendition objection to judgment in a motion for new trial is too late to revoke the party's consent). Therefore, Carolyn has failed to establish that she revoked her consent to the settlement agreement before the trial court signed the final divorce decree.

We hold that Carolyn has failed to establish that the trial court erred when it signed the final decree of divorce. We overrule Carolyn's third issue.

In her fourth issue, Carolyn complains that the trial court erred when it signed a divorce decree that did not "match" the parties' alleged agreement. Carolyn argues that the agreement recited into the record at the hearing was vague and ambiguous in comparison to the detailed terms set forth in the trial court's final decree of divorce. Without specification, Carolyn asserts that she may have agreed to different terms than those reflected in the final decree and reasserts that she could not have agreed to those terms because she was incompetent at the time the agreement was made. As we have determined that Carolyn failed to overcome the presumption that she was competent during the proceedings in the trial court, her purported lack of competence or capacity is not a factor in our analysis of this issue.

In a divorce case, the trial court must order a division of the community estate of the parties in a manner that the court deems just and right. FAM. § 7.001 (West 2006); *Bradshaw v. Bradshaw*, 555 S.W.3d 539, 543 (Tex. 2018). The trial court may set forth the parties' agreement as to the division of property in the decree. FAM. § 7.006(b). When the parties' agreement is included in the divorce decree, the divorce decree becomes a consent judgment, subject to the same degree of finality and binding force as a judgment rendered in an adversary proceeding. *McCray v. McCray*, 584 S.W.2d 279, 281 (Tex. 1979) (per curiam); *Abrams v. Salinas*, 467 S.W.3d 606, 610 (Tex. App.—San Antonio 2015, no pet.).

18

When a trial court renders judgment on the parties' settlement agreement, the judgment must be in strict compliance with the terms of the agreement. *Vickrey v. Am. Youth Camps, Inc.*, 532 S.W.2d 292, 292 (Tex. 1976) (per curiam); *In re A.E.*, 580 S.W.3d 211, 215 (Tex. App.—Tyler 2019, pet. denied). The trial court is without power to supply terms, provisions, or conditions not previously agreed to by the parties. *In re A.E.*, 580 S.W.3d at 215. A consent judgment that does not strictly espouse the terms of the parties' agreement must be set aside. *Chisholm*, 209 S.W.3d at 98.

At the final hearing, Carolyn's attorney, Thedford, informed the trial court: "We are going to announce the agreement," and Billy's attorney, McCool, recited that the parties agreed that Billy would pay Carolyn $110,000 and that Billy would be awarded all the property, which consisted of a 165-acre farm, another tract of land, a note, and 30 head of cattle. Carolyn did not object that any term of the recited agreement was vague or ambiguous.

Carolyn did not object in either of her motions for new trial that the property division in the decree did not comport with the parties' agreement. Indeed, the closest Carolyn came to such a complaint was one sentence in her second motion for new trial in which she stated, without elaboration, that the trial court erred when it found that the divorce was agreed because "[t]he announced agreement at the final hearing is not specific enough to delineate each of the assets awarded to each party as found in the Final Decree of Divorce." Carolyn provided no explanation on how the assets awarded in the final divorce decree did not match those set out in the parties' agreement.

Finally, on appeal, Carolyn does not identify any term of the divorce decree that fails to comport with the terms of the settlement agreement that were recited during the final hearing or vice versa. In sum, Carolyn has failed to show—and has not attempted to show—that any term of the settlement agreement embodied in the

19

trial court's final decree of divorce does not "match" a term of the agreement as recited at the final hearing. Consequently, Carolyn failed to establish that the trial court erred when it signed a final divorce decree that did not "match" the parties' agreement. We overrule Carolyn's fourth issue.

In her fifth issue, Carolyn complains that the trial court erred when it denied her second motion for new trial. We review a trial court's denial of a motion for new trial for abuse of discretion. *Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 926 (Tex. 2009) (per curiam). A trial court abuses its discretion when it acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

Carolyn complains that the trial court misapplied the law when it denied the second motion for new trial because (1) it allowed Carolyn to enter into the settlement agreement when she lacked capacity, (2) Carolyn did not agree to the final decree of divorce, (3) error appeared on the face of the record, and (4) the terms of the decree differed from the recited settlement agreement. However, Carolyn has raised these same complaints—independently of their relation to the trial court's denial of her motion for new trial—in each of the preceding issues, and we have overruled each complaint. Therefore, we hold that the trial court did not misapply the law when it failed to grant Carolyn's second motion for new trial. We overrule Carolyn's fifth issue.

We affirm the trial court's judgment.

January 31, 2020 JIM R. WRIGHT

Panel consists of: Bailey, C.J., SENIOR CHIEF JUSTICE
Stretcher, J., and Wright, S.C.J.[5]
(Willson, J., not participating.)

---

[5]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.