## HARRIS COUNTY DRAINAGE DIST. NO. 12 v. CITY OF HOUSTON et al. (No. 9195.)

Court of Civil Appeals of Texas. Galveston. Dec. 4, 1928.

Rehearing Denied Dec. 13, 1928.

A. E. Amerman, of Houston, for appellant.

Sewall Myer and J. H. Painter, both of Houston, for appellees.

LANE, J. On the 29th day of December, 1922, Harris county drainage district No. 12, together with bonds for its improvement, were voted by the residents thereof, and on the 30th day of December, 1922, it began to make improvements, which included the dredging, straightening, and deepening of Bray's bayou and Harris gully.

On the 30th day of December, 1922, one day after the bonds were voted by said district, the city of Houston legally extended its limits and took into its boundaries a part of the territory embraced in Harris county drainage district No. 12, including a part of Bray's bayou and the territory around Harris gully. A part of the territory so taken into said city limits was not in the boundaries of the drainage district.

All of the improvements made by Harris county drainage district No. 12 both outside the city limits and in the territory newly taken into the city limits were made after the latter had been included in the city limits. Harris gully, including its intersection with Bray's bayou, and all of the territory involved in this controversy, was, at the time of the construction of the improvements made by the district and the city, and at all times since, within the city limits of Houston, but not in the city limits of Houston when the drainage district was voted by the people. A considerable part of the territory is outside of the drainage district.

The Harris county drainage district No. 12, a corporation created under the laws of the state of Texas, brought this suit against the city of Houston, its mayor and commissioners, and against Nichols & Martin, a corporation, agents and employees of said city, to restrain the city, its officers, agents, and employees, from trespassing upon the property alleged to be the property of said district, and from undertaking to dig or dredge in the ditches or canals of the drainage district, and from making any artificial drains into ditches without first complying with the state's statutes which declare that all canals, drains, ditches, and levees made, and water courses cleaned or constructed, are the public property of the district, and forbidding any individual company, corporation, or adjoining district to drain adjacent lands located outside the drainage district without first obtaining the consent of the district as provided by the statute, and paying a proportionate part of the cost.

The plaintiff alleged that the city was threatening to drain water from territory within the city lying both within and without the drainage district into the drainage system of the district without obtaining the consent of the district and the commissioners thereof, and that the city of Houston was assuming the right to drain large quantities of water embraced in an extensive underground drainage system from territory within and without the district into Harris gully, and was asserting the right to take possession of Harris gully, which had been deepened at the expense of the district, and to dig into the banks and bed of the same without consultation with, or the consent of, the district, and was proceeding wrongfully to take forcible possession of drainage improvements placed by law in the custody and control of the commissioners of the district.

Plaintiff alleged that it had deepened and widened Bray's bayou and that funds from the sale of its bonds had been expended in so doing; that a part of the improvements

made by it consisted of the deepening, widening, and straightening of Harris gully, known as Harris bayou, a tributary of Bray's bayou. Plaintiff also pleaded articles 8153, 8154, 8167, 8168, and 8169, of the Revised Civil Statutes of 1925, which authorize the incorporation of drainage districts, define its property rights, and confer certain authority upon drainage commissioners to control the properties of said district, and which require a petition to be filed by private individuals, companies, and corporations for permission to drain lands located adjacent to, but outside of, an established drainage district, into the drains of said drainage district, in support of its contentions.

On the 15th day of February, 1928, the court sitting in chambers granted a temporary injunction as prayed for by the plaintiff, and set the cause for final hearing in the district court for the Sixty-First judicial district on the 20th day of February, 1928.

On the day set for the final hearing, the city of Houston filed its answer, demurring generally to the plaintiff's petition, and defending further upon the following grounds:

First. That there is no allegation in plaintiff's petition that the work to be done by the city under its contract with Nichols & Martin would work irreparable injury to plaintiff.

Second. That it is shown by the petition that the work and project which plaintiff seeks to enjoin is the work and project of a municipal corporation for the benefit of a large number of its citizens and is a public work of necessity for the protection of the property, health, and welfare of the city, and is of such great public necessity and convenience as to constitute the balance of convenience in favor of the city and its inhabitants to such extent as to be reason for refusing the prayer for an injunction.

Third. That the plaintiff has under the law no right of refusal to permit this defendant to use such drainage district ditch for the purposes which it is alleged it is attempting to use it; that such right and power on its part is only a right to have its engineer examine and report upon the ability of such ditch to carry the water expected to be turned therein and to require the paying into the county treasury certain sums of money bringing a pro rata portion in ratio of the water being turned into the water originally carried by such ditch, which, at the most, would give them the right to collect certain moneys and nothing more, and, the city of Houston being a municipal corporation, perfectly solvent, such right for injunctive relief prayed for herein should be denied.

Fourth. That, by reason of the constitutional amendment of 1913, known as the Home Rule Amendment (Acts 1911, p. 284; Const. art. 11, § 5), and the passage of the provisions of article 1175 et seq. of our Revised Civil Statutes of 1925, by the Legislature in 1921 (Acts 1921, p. 169), known as the Home Rule Enabling Act, which gave to cities such as the city of Houston full legislative power and authority within its confines to pass such reasonable ordinances as it deemed expedient for the protection of the property, health, and welfare of its inhabitants, not inconsistent with the Constitution or laws passed by the Legislature. That such amendment and Enabling Act passed in 1921 had the effect to repeal the acts of 1907 (Acts 1907, c. 40) and 1911 (Acts 1911, c. 118), relied upon by the plaintiff in so far as they are in conflict with the Home Rule Amendment or the provisions of the Enabling Act.

Fifth. That the word "corporation," as used in article 8167, pleaded by plaintiff, does not mean "municipal corporation," and there is no requirement in law that the city of Houston shall, before draining water from the natural watershed of Harris gully and Bray's bayou lying within its corporate limits into said gully and bayou, make written application for permission to make such drains to the drainage commissioners or to any one whatsoever, and therefore a failure to make such application and secure such permission constitutes no grounds for the injunctive relief prayed for. That Harris bayou or gully, which is now being used by the plaintiff herein as a drainage ditch for its district, is within the boundary limits of the city of Houston, and has been for a number of years, and is a natural drainage existing from time immemorial, and that all of the territory sought to be drained into this ditch by this defendant is a territory which naturally has ever drained therein, and that the mere fact that part of this natural drainage comes from some territory which was not included in the drainage district's territory would not entitle said drainage district to prevent such drainage from coming into its drainage ditch or canal. That the territory which defendant has in contemplation draining into said Harris bayou is all territory which naturally drains thereinto. That such drainage is a natural drainage, and would not injure said bayou as a drainage for the balance of drainage district No. 12's land, and that the contemplated drainage would not overtax the capacity of said Harris bayou, and that the work contemplated to be done on said bayou would not injure, but would benefit, it. That the contract which it has with the firm of Nichols & Martin is only for the cleansing, widening, and benefiting of Harris bayou at the point designated, and would not and could have no damaging effect upon said bayou as a drainage point, but would be vastly beneficial thereto. That the city of Houston is a home rule city of approximately 300,000 inhabitants, and that, because of its rapid growth, dense population, and numerous buildings, it is necessary for the health and welfare of its citizens and its property

owners that it drain its territory in a thorough and adequate manner and as rapidly as possible, and that the territory which it is now seeking to drain is a residential territory lying in the south central portion, thickly populated, and that the health, welfare, and happiness of the citizens residing in this territory require this drainage to be completed as rapidly as possible. That the Constitution of the state of Texas and the general laws of the state of Texas and the charter of the city of Houston give to this defendant full control of the territory within its limits, and charge it with the care of, among other things, drainage for the benefit and health of its inhabitants. That the Drainage Act of 1907 as amended in 1911 does not require a municipal corporation to make application to nor obtain permission from any drainage company or district having a ditch through such city limits to empty its drainage waters into such ditch or canal. That the question herein involved at the most would be a question of money, and that, under the very strongest aspect of the law under which the plaintiff operates, it could not prevent this defendant from using such drainage canal, but could merely collect, if anything, such pro rata of the costs as the additional drainage sought to be placed in said canal bears to the original proposition, pro rata, and that, as defendant is solvent, a judgment against it in any court could easily be collected. That the work of the city in draining the area involved is a work of great public necessity and of great benefit and convenience to its inhabitants.

The city of Houston denied generally.

Defendant's prayer is that, on a trial hereof, the court should hold that the plaintiff herein has shown no grounds, reasons, or causes for injunctive relief, and that its petition should be denied and this cause dismissed, or, if this court hold that it may have shown some grounds for injunctive relief, the court should then hold that, because of the balance of convenience and the public character and great necessity for the work being done by defendant, such relief should be denied.

Defendants Nichols & Martin denied generally. They alleged their contract with the city, that the contemplated work would in no manner injure the drainage system of the plaintiff, but would be beneficial to the same; that plaintiff for several months prior to filing its suit knew of the existence of their said contract, but, notwithstanding such knowledge, permitted them, without protest, to employ their workmen and order the necessary machinery shipped from other points, for the sole purpose of carrying out their contract, at a cost to them of $1,000; that plaintiff delayed bringing its suit until they had gone to great trouble and expense and had begun work under their contract, and therefore should be held to be estopped from obtaining the injunction prayed for.

Upon a hearing upon the pleadings and evidence, the court rendered judgment dissolving the temporary injunction theretofore granted, and rendered judgment denying the injunction prayed for. The plaintiff has appealed.

Upon request of appellant for findings of fact and conclusions of law, the court filed the following, in addition to the facts hereinbefore stated, to wit:

That the territory lying south of Rice Institute and east of Reinerman avenue was contained within the boundaries of the proposed drainage district, and was, on December 29, 1922, the date of the creation of such district, outside of the city of Houston.

That in like manner the territory embraced in such petition included the balance of the land through which Harris gully ran to its intersection with Bray's bayou, and included all of Bray's bayou for considerable distance above and below where Harris gully ran into same—all of which territory was at the time of the filing of said petition asking for the creation of such district outside of the city limits of the city of Houston. That subsequently, on December 30, 1922, the city limits of Houston were extended so as to include all of the territory lying east of Reinerman avenue extending south and a sufficient distance east to include all of Harris gully to its intersection with Bray's bayou, which said extension of city limits was prior to any improvements on either Harris gully or Bray's bayou, or any improvements whatsoever being made in Harris county drainage district No. 12. That all of said Harris gully and Bray's bayou, so far as it affects any part of this suit, are now, and were at the time of the application for the injunction herein, within the city limits of the city of Houston.

That all of the steps necessary to the improving of Bray's bayou and Harris bayou by the drainage district were had and performed, and, as part of the improvement, Bray's bayou was deepened and Harris bayou dredged out from its mouth to a point where it would intersect Rice boulevard, where such improvements stopped. That such improvements, especially the digging of Harris bayou gully, were done and performed after the territory was legally embraced in the city of Houston.

The city of Houston, on November —, 1927, awarded a contract to the defendants Nichols & Martin, a corporation, for the deepening and widening of Harris gully from its intersection with Rice boulevard southwardly a distance of approximately 2,000 feet. That it is contemplated by such contract that the canal dredged by the drainage district in the bed of Harris bayou will be deepened under said contract to an added depth of 5 feet and a width sufficient to make a one to one slope,

which will add approximately 20 feet to the width of said original canal.

That the city of Houston has instructed its engineering department to lay out a district to be drained into Harris bayou, embracing what they conceive to be the entire boundary line of the Harris bayou natural drainage area. That a part of this territory is within Harris county drainage district No. 12, and a part outside of Harris county drainage district No. 12. That there is embraced in the Southampton area already connected 282 acres, and there is embraced an area within the city of Houston, but outside of Harris county drainage district No. 12, 425 acres, which is proposed to be drained into Harris gully as changed. The plans for this drainage area as prepared by the city engineer have been approved by the city of Houston for future development.

That the city of Houston is now advertising for bids for the construction of a drainage sewer to connect with the ditch covered by the contract with Nichols & Martin, having a height of 7 feet and a width of 22 feet, designed to drain this area, and that the Nichols & Martin contract and the sewer now being advertised for constitute the first units in this drainage plan. That it is the intention of the city of Houston to let such last-mentioned contract. That the Nichols & Martin contract was executed on behalf of the city on February 8, 1928, and that the engineering. department has notified Nichols & Martin to begin work on the earthen ditch in Harris bayou, and that they are prepared to proceed. That the territory sought to be drained by the city of Houston into Harris gully is a part of the natural watershed of said Harris bayou, and naturally drained into said Harris bayou, and thence into Bray's bayou. That the city of Houston is not attempting to, nor contemplating, the drainage of any water into Harris bayou except off of territory within such natural watershed thereof. That the work to be done and performed under the contract of Nichols & Martin on Harris gully will not injure, but will benefit, said Harris gully as a drainage ditch. That the water to be drained into Harris bayou through the contemplated drainage of the city of Houston will not overtax the capacity of said Harris bayou as a drainage ditch, and will not destroy or hamper the use thereof, for the use and benefit of the rest of Harris county drainage district No. 12. That the amount of water drained into Harris bayou after the sewer is constructed will be greatly increased in volume and velocity.

That the city of Houston has not complied with articles 8167, 8168, 8169, or 8153, of the Revised Statutes, and have contended and now contend that said statutes are not applicable to the city of Houston, and that the city of Houston has a legal right to drain in-

to Harris bayou, without permission from the drainage district.

That the area marked on "Exhibit B," showing the drainage area of Harris bayou, is all in the watershed of Harris bayou.

That the city of Houston is a city of more than 5,000 people, and is operating under what is known as a home rule charter, with all legal rights pertaining thereto, and that there is nothing in its charter, the general laws of the state, or the Constitution, which prohibits it from using the natural drainage area within its limits and the gullies and bayous therein, or which require it, as a prerequisite to such use, to make application to any one, and that the general laws of the state of Texas and its charter require it to provide adequate and sufficient drainage for the protection of the health and property of its people.

No attack is made by appellant upon the findings of fact made by the court, but appellant attacks only the conclusions of law upon which the court based its denial of the injunction prayed for.

Appellant's contention for a reversal of the judgment is that the court erred in holding that the acts of the Legislature of 1907 and 1911, upon the provisions of which the plaintiff relied to sustain its suit, including article 8097, which provides for the creation of drainage districts which may or may not include villages, towns, and municipal corporations, or any part thereof, and that improvements constructed by such districts shall be the public property of such districts, and forbidding any "individual, company, corporation, or adjoining district" from draining outside lands into the improvements of such district, and which provides the method of securing connection with such improvements and for taxing certain costs, were repealed by the act of the Legislature of 1921 known as the Home Rule Enabling Act, in so far as they are in conflict with such enabling act, and do not apply to the city of Houston, a home rule municipality.

It contends that said acts of 1907 and 1911 are general laws and were in effect at the time the city of Houston voted its home rule charter, and that, as such charter and ordinances passed thereunder are inconsistent with such general laws, in so far as they undertake to divest the drainage district of the absolute control and regulation of the drainage improvements, they are therefore void and of no effect.

We have hereinbefore stated the contentions of the appellees, and will not repeat them here.

We think the contentions of appellant should be overruled. The Enabling Act above mentioned was passed long after the passage of the acts of 1907 and 1911 by the Legislature, and we agree with the trial court that such Enabling Act in effect repealed so much

of the acts of 1907 and 1911 as are in conflict with it, and that the provisions of the Enabling Act are not inconsistent with the Constitution nor any existing legislative act.

The following sections of article 1015, Revised Civil Statutes of 1925, specially defining the powers of the city council provides, respectively, as follows:

"1. *Promotion of Health.*—To do all acts and make all regulations which may be necessary or expedient for the promotion of health or the suppression of disease."

"3. *Joint Sanitary Regulations.*—To cooperate with the commissioners' court of the county in which the municipality is situated in making such improvements as may, by it and said court, be deemed necessary to improve the public health and promote efficient sanitary regulations, and to arrange for the construction of, and payment for, said improvements."

"25. *Bridges, Sewers, etc.*—To establish, erect, construct, regulate and keep in repair, bridges, culverts, and sewers, sidewalks and cross-ways; and to regulate the construction and use of the same, and to abate any obstructions or encroachments thereon. * * *"

By article 1177, Revised Civil Statutes of 1925, same being a provision of the Home Rule Amendment passed in 1921, it is provided that "all powers heretofore granted any city by general law or special charter are hereby preserved to each of said cities, and the power so conferred upon such cities, either by special or general law, is hereby granted to such cities when embraced in and made a part of the charter adopted by such city."

By article 1180 of the same statute, it is provided that "such city shall further have the power to straighten, widen, levy, enclose, or otherwise improve any river, creek, bayou, stream, or other body of water, or streets or alleys and to drain, grade, fill and otherwise protect and improve the territory within its limits."

If the contention of appellant is sustained, the city would be powerless to extend its streets over or beyond Bray's bayou or Harris gully and to place bridges over same, or otherwise improve such streets without the consent of the drainage commissioners. The drainage system of the city would be paralyzed; indeed, such comissioners could halt the city authorities at the brink of such bayous and say to them thus far shall you go and no further, and in other ways prevent the city from promoting such improvements within its limits as are necessary for the protection of the properties, health, and general welfare of its citizens, unless and until it might be authorized by a court of competent jurisdiction to make such improvements in a suit brought to obtain such right. Certainly the Legislatures never contemplated such results by the passage of the acts of 1907 and 1911, relied upon by appellant to sustain its contention.

We are of opinion that the Legislature never intended, by the passage of the acts of 1907 and 1911, to make the provisions thereof apply to municipal corporations such as the city of Houston, as the classes which the prohibitory provisions were to affect are designated as any "private *individual*, company or corporation." In view of the statutes above copied, it is to our minds inconceivable that the Legislature intended to authorize a drainage district to take control of a natural stream or water basin traversing a large city such as Houston, with power to prohibit such city from draining water from the natural watershed of such streams.

The suggestion that, if appellant has a cause of action against the city of Houston, it is one only for a pro rata contribution of the costs of straightening, clearing, and deepening Bray's bayou in a suit, is not before us for our consideration.

For the reasons above expressed, the judgment is affirmed.

Affirmed.