**Opinion filed October 19, 2023**



In The

# Eleventh Court of Appeals

_____

## No. 11-22-00204-CV
_____

**VINCENT P. RASCON, Appellant**

**V.**

**THERESA HANSEN, Appellee**

**On Appeal from the 318th District Court**

**Midland County, Texas**

**Trial Court Cause No. FM-56,937**

## M E M O R A N D U M   O P I N I O N

Appellant, Vincent P. Rascon, appeals the trial court's judgment clarifying and enforcing certain aspects of the property division in the parties' final decree of divorce. In two issues, Rascon asserts that (1) the voluntary-payment rule released him from his obligation to make further payments to Appellee, Theresa Hansen, under the terms of the decree; and (2) the trial court erred when it imposed additional

payment obligations on Rascon, which resulted in an improper modification to the terms of the final decree. We affirm.

## I. *Factual Background*

The parties' Agreed Final Decree of Divorce (the decree) was signed by the trial court on March 20, 2014. Hansen testified that the decree was a pro se final decree.[1] The decree awarded Hansen a residence in Midland (the residence) as her sole and separate property. The decree further required Rascon to pay $2,600 a month to the mortgage-holder of the residence until the principal balance of the mortgage was reduced to $200,000. In this regard, the decree recites the following:

> IT IS ORDERED AND DECREED that the husband, VINCENT P. RASCON, shall pay, as a part of the division of the estate of the parties, and shall indemnify and hold the wife and her property harmless from any failure to so discharge, these items:

> H-1. The balance due, including principal, interest, tax, and insurance escrow, on the promissory note executed by VINCENT P. RASCON, in the original principal sum of $354,600.00, dated July 26, 2012, payable to Franklin American (formerly LRS Financial Services) in the monthly amount of $2,600.00 and secured by deed of trust on the 900 Bedford Dr., Midland, Texas real property awarded in this decree to the wife, which is recorded at volume _, page _, Deed of Trust Records of Midland County, Texas, until the outstanding principal balance on such promissory note is reduced to $200,000.00, at which time, husband shall notify wife of completion of his obligation to pay the monthly mortgage payment on the Bedford real property and husband's obligation to pay such monthly mortgage shall cease and wife shall be solely responsible for payment on such outstanding mortgage on the residence until such note is paid in full or the real property is sold or refinanced and the mortgage is extinguished.

---

[1]Although Appellee is not pro se on appeal, we hold pro se litigants to the same standards as licensed attorneys and require them to be familiar with and comply with all applicable laws and rules of procedure. *Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184–85 (Tex. 1978); *Aaron v. Fisher*, 645 S.W.3d 299, 312 (Tex. App.—Eastland 2022, no pet.).

Under the language of the decree, Hansen became responsible for the remaining mortgage balance once it was reduced to the threshold amount agreed to by the parties—$200,000.

Hansen decided to sell the residence in August 2020, before the mortgage's principal balance had been reduced to $200,000. Hansen testified that she believed the decree did not address the potential sale of the residence prior to the reduction of the mortgage balance; therefore, she contacted Rascon to discuss his mortgage obligation. Hansen e-mailed Rascon on August 11, 2020, to inform him that she was listing the residence for sale, and that there was a "remaining balance of approximately $95,000" that he was obligated to pay on the mortgage. In this same e-mail exchange, Hansen proposed to Rascon that (1) she could pay off the entire mortgage balance and in return he would agree to pay his monthly payment of $2,600 to her until his obligation under the decree was satisfied, or (2) he could secure a separate loan for his share of the remaining mortgage balance and Hansen would only pay for her share of the mortgage obligation under the decree. Rascon responded to Hansen's e-mail and stated: "Ok. Let me know what the balance will be at the time of [the] sale. We will figure it out once we have a figure." In accordance with their communications, Hansen subsequently listed the residence for sale on August 14 and notified Rascon on September 15 that the sale of the residence was set to close on October 2.

On September 28, Rascon e-mailed Hansen to inquire about the status of the sale. Rascon also asked Hansen to send him the loan balance before the residence closed and to prepare a five-year amortization payment schedule that would confirm Rascon's continuing obligation to pay off the portion of the loan that he was responsible for. Hansen closed the sale of the residence on October 2.

Three days later, Hansen sent Rascon the amortization schedule—fifty-eight monthly payments of $1,800 and a final, fifty-ninth payment of $1,843. The amortization schedule did not include definitive payment dates; rather, it only indicated the month upon which each payment was due. The total amount to be paid by Rascon in the amortization schedule was $106,243. This amount included Rascon's share of the mortgage balance in excess of $200,000, as well as Hansen's ad valorem tax refund, which Rascon had retained. Rascon's first payment was due and scheduled to be paid in November 2020.

Rascon responded to the amortization schedule in an e-mail to Hansen asking her "how many checks [she] had left" so that she could make payments to herself on his behalf. When she answered that she did not "have any checks left," Rascon responded that he would send Hansen his first check in November. In other words, Rascon further acknowledged his obligation to continue making mortgage payments after the residence was sold when he informed Hansen that he would send her the first payment in November 2020. Hansen did not hear back from Rascon after this e-mail exchange, nor did Rascon make any payments toward the mortgage as described in the decree or amortization schedule.

On November 16, Hansen sent a formal notice to Rascon regarding his mortgage payment obligations under the decree. In the notice, Hansen stated that she intended to rescind the amortization agreement and seek an enforcement of the decree if Rascon did not respond to the notice within ten days. Rascon did not respond, and Hansen rescinded the amortization agreement. Hansen then filed a motion to clarify and enforce the decree. After a hearing, the trial court rendered judgment in favor of Hansen for $106,243 in damages, $7,946.39 in accrued prejudgment interest, and $10,000 in attorney's fees. Pursuant to Rascon's request, the trial court entered findings of fact and conclusions of law and found that

4

(1) Rascon was required to pay Hansen for the mortgage payments on the residence in excess of $200,000 as recited in the decree, (2) Rascon had wrongfully retained the ad valorem tax refund that Hansen sought, and (3) the recovery of reasonable and necessary attorney's fees in favor of Hansen was mandatory. This appeal followed.

## II. *Standards of Review*

We review a trial court's ruling on a post-divorce motion for clarification or enforcement of a final divorce decree under an abuse of discretion standard. *Moore v. Moore*, 568 S.W.3d 725, 729 (Tex. App.—Eastland 2019, no pet.); *see also Woody v. Woody*, 429 S.W.3d 792, 797 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *Morales v. Rice*, 388 S.W.3d 376, 381 (Tex. App.—El Paso 2012, no pet.). A trial court abuses its discretion when it acts in an arbitrary and unreasonable manner or without reference to any guiding rules or principles. *Moore*, 568 S.W.3d at 729 (citing *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex. 1985)).

In family law cases, the abuse-of-discretion standard overlaps with the traditional sufficiency standards; therefore, legal and factual insufficiency are not independent grounds of reversible error, but instead are relevant factors in our assessment of whether the trial court abused its discretion. *Moore*, 568 S.W.3d at 729 (citing *Sink v. Sink*, 364 S.W.3d 340, 344 (Tex. App.—Dallas 2012, no pet.)); *see Boyd v. Boyd*, 131 S.W.3d 605, 611 (Tex. App.—Fort Worth 2004, no pet.).

To determine whether the trial court abused its discretion, we consider whether the trial court (1) had sufficient evidence upon which to exercise its discretion and (2) erred in its exercise of that discretion. *In re A.B.P.*, 291 S.W.3d 91, 95 (Tex. App.—Dallas 2009, no pet.). The applicable sufficiency review comes into play under the first prong. *Moroch v. Collins*, 174 S.W.3d 849, 857 (Tex.

App.—Dallas 2005, pet. denied). We then determine whether, based on the evidence, the trial court made a reasonable decision. *Id.* A trial court does not abuse its discretion if there is some evidence of a substantive and probative nature to support its decision. *Id.*

When a legal sufficiency challenge is raised, we must determine whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). In evaluating a legal sufficiency challenge, we review the evidence in the light most favorable to the verdict and credit evidence that supports the finding if a reasonable factfinder could, and we disregard contrary evidence unless a reasonable factfinder could not. *Id.* at 821–22. A legal sufficiency or "no evidence" challenge will be sustained if the party suffering the adverse decision at trial shows one of the following: (1) the complete absence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact. *Id.* at 810 (citing Robert W. Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 TEX. L. REV. 361, 362–63 (1960)). When a party attacks the legal sufficiency of an adverse finding on an issue on which that party had the burden of proof, the party must demonstrate on appeal that the evidence conclusively establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001).

To analyze a factual sufficiency challenge, we must examine all the evidence in the record—both supporting and contrary to the trial court's judgment—and reverse only if (1) the evidence in support of the finding is so weak as to be clearly wrong and unjust or (2) the finding is so against the great weight and preponderance

of the evidence as to be clearly wrong and manifestly unjust. *Id.* at 242; *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996); *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986); *In re King's Estate*, 244 S.W.2d 660, 661 (Tex. 1951).

In any sufficiency review, the factfinder is the sole judge of witness credibility and evidentiary weight. *City of Keller*, 168 S.W.3d at 819. We do not substitute our judgment for that of the factfinder. *Pace v. Pace*, 160 S.W.3d 706, 711 (Tex. App.—Dallas 2005, pet. denied) (citing *F.D.I.C. v. F. & A Equip. Leasing*, 854 S.W.2d 681, 684–85 (Tex. App.—Dallas 1993, no writ)). Further, the factfinder may choose to believe some, all, or none of a witness's testimony. *See Glenn v. Glenn*, 659 S.W.3d 212, 219 (Tex. App.—El Paso 2022, pet. denied).

### III. *Analysis*

Rascon contends on appeal that (1) Hansen is not entitled to receive reimbursement for voluntary payments made by her on the mortgage for the residence after the divorce was granted, and (2) the trial court erred when it imposed additional payment obligations on Rascon in excess of his original obligations under the decree, which he alleges resulted in an improper substantive change to the terms of the decree. We will first address the voluntary-payment rule issue.

#### A. *Voluntary Payments*

In Rascon's first issue, he argues that the voluntary-payment rule bars Hansen from receiving reimbursement for payments that she made to reduce the mortgage balance. We conclude that the voluntary-payment rule does not apply here.

The voluntary-payment rule is a common law principle in which "money voluntarily paid on a claim of right, *with full knowledge of all the facts*, in the absence of fraud, duress, or compulsion, cannot be recovered back merely because the party at the time of payment was ignorant of or mistook the law as to his liability." *Pennell v. United Ins. Co.*, 243 S.W.2d 572, 576 (Tex. 1951) (quoting 40

7

AM. JUR. § 205 (1942)) (emphasis added). Courts have occasionally applied the voluntary-payment rule as a defense to claims of unjust enrichment in disputes between private parties, due to public policy concerns regarding protecting the finality of payments. *See e.g., BMG Direct Mktg., Inc. v. Peake*, 178 S.W.3d 763, 768–69 (Tex. 2005). In its application, the voluntary-payment rule requires a finding that a person voluntarily acted with "full knowledge of all the facts." *Id.* at 772.

Rascon cites to *Tyler v. Tyler* and *Runcie v. Runcie* to support his argument. *See Tyler v. Tyler*, 742 S.W.2d 740 (Tex. App.—Houston [14th Dist.] 1987, writ denied); *Runcie v. Runcie*, 407 S.W.2d 861 (Tex. App.—Amarillo 1966, writ ref'd n.r.e.). In *Tyler*, a divorce decree divided shares of stock equally between former spouses and provided that the ex-husband was required to pay the balance of a promissory note when it became due approximately three-years later. *Tyler*, 742 S.W.2d at 741–42. So that she could have access to the stocks, the ex-wife sold her portion of the stock because she "needed some money," and the balance owed on the note was satisfied before it was due. *Id.* at 742–43. The ex-wife later sued the ex-husband for reimbursement of the note payment made by her, and the trial court awarded her the amount that she had paid on the note in its enforcement order. *Id.* at 741–42. The Fourteenth Court of Appeals reversed the trial court's order and held that the ex-wife was not entitled to reimbursement because she had voluntarily made the payment on the note with full knowledge of all the facts and without fraud, deception, duress, or coercion. *Id.* at 743.

In *Runcie*, the parties entered into a property settlement agreement where the ex-husband was to assume the indebtedness owed on certain life insurance policies. *Runcie,* 407 S.W.2d at 862. After the agreement was executed, the parties endorsed a series of checks for payments to be made on the insurance policies. *Id.* The ex-wife then sought reimbursement for the payments she made. *Id.* Because the ex-

8

wife did not plead or prove that her payments were the result of fraud, deception, duress, or coercion, the Seventh Court of Appeals held that she was not entitled to reimbursement since the payments were made by her voluntarily and with full knowledge of all the facts. *Id.* at 863.

*Tyler* and *Runcie* are distinguishable from the circumstances before us. *Tyler* concerned a premature note payment by the ex-wife on the ex-husband's assumed debt, where the decree included a definitive date for when the remaining debt was to be paid by the ex-husband. *Tyler*, 742 S.W.2d at 742. The court in *Tyler* concluded that there was no evidence that the ex-wife made the note payment to protect her shares of stock; instead, she made the payment—with full knowledge of the facts—because she "needed some money." *Id.* at 743. Thus, the court applied the voluntary-payment rule in favor of the ex-husband to prevent the ex-wife's unjust enrichment. *Id.* Like in *Tyler*, *Runcie* concerned voluntary payments made by the ex-wife—with full knowledge of the facts—towards a debt assumed by the ex-husband. *Runcie*, 407 S.W.2d at 863.

An agreed property division that is incorporated into a final divorce decree is treated as a contract and governed by the rules of construction applicable to ordinary contracts, not by the law of judgments. *Allen v. Allen*, 717 S.W.2d 311, 313 (Tex. 1986); *McGoodwin v. McGoodwin*, 671 S.W.2d 880, 882 (Tex. 1984); *Gates v. Gates*, No. 11-18-00139-CV, 2020 WL 3635241, at *3 (Tex. App.—Eastland June 30, 2020, no pet.) (mem. op.). Our primary concern in interpreting a contract is to ascertain the intent of the parties. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011). We construe the decree as a whole to harmonize and give effect to all of its terms. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983).

If, when read as a whole, the divorce decree's terms are unambiguous, we must give effect to the trial court's order in light of the literal language used. *In re C.P.Y.*, 364 S.W.3d 411, 413 (Tex. App.—Dallas 2012, no pet.). However, if the terms of the decree in dispute are ambiguous, we must interpret the decree by reviewing the decree as a whole and the record. *Hagen v. Hagen*, 282 S.W.3d 899, 901 (Tex. 2009) (citing *Shanks v. Treadway*, 110 S.W.3d 444, 447 (Tex. 2003)). A decree is ambiguous if its meaning is uncertain or is reasonably susceptible to more than one interpretation. *See Coker*, 650 S.W.2d at 393. Whether a divorce decree is ambiguous is a question of law that we review de novo. *See id.* at 394; *see also Hagen*, 282 S.W.3d at 901–02. If an ambiguity exists, contract law provides that the property settlement agreement may be reformed to correct the parties' mutual mistake or to reflect the true intent of the parties. *Allen*, 717 S.W.2d at 313. As such, a clarification proceeding may be used to reform a property settlement agreement that is incorporated into an agreed final decree of divorce. *See id.*; *Gates*, 2020 WL 3635241, at *3.

We conclude that the decree is ambiguous as to how Rascon's financial obligations could be affected if the residence was sold before the mortgage balance was reduced to $200,000.[2] Because of this ambiguity, Hansen reached out to Rascon to clarify how he would comply with his payment obligations under the decree if she sold the residence before the mortgage balance reached the $200,000 threshold— she offered him an interest-free payment option to pay his share of the mortgage under terms of the decree. Rascon did not object to or deny his mortgage payment obligations under these proposed circumstances; instead, he informed Hansen as to how he preferred to pay his share of the mortgage. As such, Hansen could have

---

[2]We further discuss the ambiguity of the decree in the following section of this opinion.

reasonably interpreted Rascon's communications and representations as an agreement that he would continue to be responsible for, and continue to pay in accordance with the decree, the remaining balance that he owed on the mortgage at that time.

Here, the voluntary-payment rule does not apply because Hansen did not make her payment on the mortgage with "full knowledge of the facts." Hansen proactively reached out to Rascon, before listing the residence for sale, to clarify their mortgage obligations under the decree, rather than acting independently to make payments for her own benefit or doing so intentionally in contravention of the decree's express language. E-mail correspondence between the parties showed that Rascon understood that he was obligated to continue making payments under the decree, and Hansen testified that she relied on Rascon's communications and representations when she sold the residence and made payments on the mortgage. Hansen further testified that she would not have listed the residence for sale if she did not believe that the parties had an agreement for Rascon to continue making payments against the mortgage.

Further, there is no policy argument that can be made to support the application of the voluntary-payment rule in this case. The decree states that Rascon would be responsible for the mortgage payments on the residence until the loan balance was reduced to $200,000. The trial court's judgment does not change this obligation—Rascon is still only responsible for his portion of the mortgage debt as stated in the decree. Consequently, Hansen was not unjustly enriched because she received nothing beyond what was awarded to her in the decree's original division of property.

A trial court abuses its discretion by failing to analyze or apply the law correctly. *Iliff v. Iliff*, 339 S.W.3d 74, 78 (Tex. 2011) (citing *Walker v. Packer*, 827

S.W.2d 833, 840 (Tex. 1992)). As discussed above, Hansen did not make the mortgage payment with full knowledge of the facts; therefore, the voluntary-payment rule does not apply. Because the voluntary-payment rule is inapplicable, the trial court did not abuse its discretion when it granted relief to Hansen. Accordingly, Rascon's first issue on appeal is overruled.

B. *Clarification of the Decree*

In his second issue, Rascon contends that the trial court's ruling was an improper modification of the decree under Section 9.007 of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 9.007 (West 2020). We first review the legal and factual sufficiency of the evidence supporting the trial court's order.

Rascon argues that the trial court's clarification order is not supported by legally or factually sufficient evidence. We disagree. In his brief, Rascon does not argue that there is an absence of any traditional legal sufficiency element—whether there is an absence of a vital fact, there is only a mere scintilla of evidence supporting a fact, or the evidence conclusively established the opposite of a vital fact. *City of Keller*, 168 S.W.3d at 810. Rather, Rascon's argument on appeal is that the trial court acted beyond its authority under Section 9.007(a) when it ordered a substantive change to the property division as recited in the decree.

The decree imposed an obligation on Rascon to reduce the mortgage balance, although the terms of the decree were ambiguous as to each parties' obligation should the residence be sold before the agreed upon mortgage reduction was achieved. Because the decree was ambiguous as to these terms, the trial court was permitted to clarify the decree's provisions. In interpretating an ambiguity in the decree, the trial court could consider the language of the decree, the record, and the parties' subsequent actions. *Wilde v. Murchie*, 949 S.W.2d 331, 333 (Tex. 1997) (per curiam). The parties testified to their multiple communications where they each

12

appeared to acknowledge their obligations under the decree. Hansen then relied on these communications when she sold the residence and paid the mortgage. Considering all the evidence, the trial court's clarification order neither deviated from the original obligations imposed in the decree nor did it impose additional obligations upon Rascon—the order is consistent with the decree's language and the parties' communications and is supported by legally sufficient evidence. *City of Keller*, 168 S.W.3d at 827.

We also conclude that the trial court's order is supported by factually sufficient evidence. Although the decree does not contemplate or address the circumstances of the sale of the residence before the mortgage reduction threshold was achieved, the evidence in the record indicates that Rascon understood that he had an obligation under the decree to continue to make payments to Hansen until the mortgage balance reached $200,000, even after Hansen listed the residence for sale. As we have said and detailed above, the evidence, Hansen's testimony, and the e-mail communications between the parties further corroborate this understanding. Considering the record as a whole, we cannot say that the trial court's order is against the great weight and preponderance of the evidence, clearly wrong, or manifestly unjust. *Ortiz*, 917 S.W.2d at 772.

Rascon's argument on appeal is that the trial court acted beyond the authority granted to it under Section 9.007(a) when it ordered what Rascon alleges is a substantive change to the property division as recited in the decree. A trial court that renders a divorce decree generally retains the power to enforce or clarify the property division that is made or approved in the decree. FAM. §§ 9.002, 9.006(a), 9.008. In the enforcement of a decree, trial courts may clarify or specify the decree's property division to assist in the implementation of its order, but a trial court cannot "amend, modify, alter, or change the division of property" to affect the substantive division

13

of property as set out in the original decree. FAM. §§ 9.007(a), (b), 9.008; *DeGroot v. DeGroot*, 260 S.W.3d 658, 663 (Tex. App.—Dallas 2008, no pet.). However, the trial court may enter a clarifying order to enforce compliance with the original division of property. FAM. § 9.008(b).

We have concluded that the decree is ambiguous as to the parties' mortgage payment obligations should the residence be sold prior to Rascon reducing the loan balance to $200,000. Because the language of the decree did not contemplate or address the potential circumstances if the residence was sold, and the parties' testimony indicated they had different interpretations of the decree's language and their respective obligations, the decree was reasonably susceptible to more than one meaning. Therefore, the decree contained an ambiguity which the trial court was permitted to clarify in a subsequent order. *See Coker*, 650 S.W.2d at 393. As we have said, courts are permitted to clarify ambiguities that exist within a decree. *Hagen*, 282 S.W.3d at 901. Moreover, the parties' subsequent actions may also be relevant to the construction of ambiguous judgments. *Id.* (citing *Lone Star Cement Corp. v. Fair*, 467 S.W.2d 402, 405 (Tex. 1971)). Here, we conclude that the trial court's order does not constitute a modification of the decree's original property division; rather, it is a proper clarification of the property division as recited in the decree.

The parties agreed to the terms of, and signed, the decree which described the division of their marital property. On its face, Rascon had the obligation under the decree to make monthly payments in the amount of $2,600 until the mortgage balance on the residence was reduced to $200,000—Hansen would then be responsible for satisfying the remaining mortgage balance. Hansen testified that she believed the decree was unclear as to the parties' mortgage obligations if she sold the residence prior to the reduction of the mortgage balance. She also testified that

14

she understood that the decree obligated both parties to share the mortgage payments in the divorce, and therefore Rascon continued to be responsible for the payments if she sold the residence. When Hansen reached out to the Rascon to address his payment obligations, he accepted her interpretation of the parties' obligations and responded affirmatively to her communications, thereby corroborating Hansen's initial interpretation of the decree. To the contrary, Rascon testified that he believed the decree did not require him to make mortgage payments if the residence was prematurely sold—before the mortgage balance reached the $200,000 threshold.

Rascon cites *Tyler* and *Everett v. Everett* in support of his argument that the trial court made an improper substantive change to the decree in its enforcement ruling. *See Tyler*, 742 S.W.2d at 743; *Everett v. Everett*, 421 S.W.3d 918, 919 (Tex. App.—El Paso 2014, no pet.). The court in *Tyler* concluded that, because the voluntary-payment rule applied to the ex-wife's payments on the note that the ex-husband owed and was responsible for, the trial court's order was an improper modification because it imposed a "substantive change" to the detriment of the ex-husband in the form of an obligation to pay where no such obligation had previously existed. *Tyler*, 742 S.W.2d at 743 (citing *McGehee v. Epley*, 661 S.W.2d 924 (Tex. 1983)). In *Everett*, a divorce decree obligated the ex-husband to pay ad valorem taxes on the ex-wife's residence for thirty-six months, or until the ex-wife either resided with a member of the opposite sex or remarried. *Everett*, 421 S.W.3d at 919. The decree further stated that if the ex-wife was unable or unwilling to secure financing to purchase the property, then the residence would be listed for sale. *Id.* The trial court ordered that the residence should be sold and ordered the ex-husband to pay the ex-wife a prorated portion of the taxes due on the residence as a form of spousal support. *Id.* The Eighth Court of Appeals held that converting a debt into spousal maintenance was not a clarification, and thus the trial court's order was an

impermissible substantive change to the property division as described in the decree. *Id.* at 921.

Again, the cases cited by Rascon on this issue are distinguishable from the case before us. Under the terms of the decree, the parties' obligations were defined—Rascon was responsible for paying down the mortgage to $200,000, and Hansen was responsible for the remaining mortgage payments after the reduction threshold had been met. Unlike in *Everett*, the decree here did not provide any other criteria or qualifications that would relieve Rascon of his financial responsibilities. *Everett*, 421 S.W.3d at 919. Similarly, the decree did not contain an explicit timeline or due date for when the final payment should be made, as were the circumstances in *Everett* and *Tyler*. *Id.*; *Tyler*, 742 S.W.2d at 743. Rather, the decree detailed an open-ended obligation for Rascon to pay his share of the mortgage. Here, the trial court's order did not deviate from the obligations that were originally imposed in the decree—Rascon was only responsible for his share of the payments on the mortgage in excess of $200,000.[3] Thus, the trial court's order was not a modification of the decree as Rascon suggests.

Additionally, Rascon argues in the alternative that the trial court should not award attorney's fees in a clarification proceeding. An award of attorney's fees is reviewed for an abuse of discretion. *Tomsu v. Tomsu*, 381 S.W.3d 715, 719 (Tex. App.—Beaumont 2012, no pet.); *McKnight v. Trogdon-McKnight*, 132 S.W.3d 126, 132 (Tex. App.—Houston [14th Dist.] 2004, no pet.). Contrary to Rascon's contention, a trial court may award reasonable attorney's fees in a post-divorce

---

[3]The trial court found that Rascon received, deposited, and wrongfully retained the ad valorem tax refund and included the amount of the refund in the judgment that it rendered against Rascon. The trial court determined that the tax refund was Hansen's sole and separate property and was part of the residence that was awarded to her in the decree. As such, the enforcement of this provision was not a modification of the decree.

enforcement or clarification action. *See* FAM. § 9.014; *Messier v. Messier*, 458 S.W.3d 155, 165 (Tex. App.—Houston [14th Dist.] 2015, no pet.). Because attorney's fees may be awarded in this instance, and because the parties stipulated to the reasonableness of the fees, we conclude that the trial court did not abuse its discretion when it awarded attorney's fees to Hansen.

We conclude that the trial court's order is supported by legally and factually sufficient evidence, and that its order constituted a proper clarification, not an improper modification, of the property division as recited in the decree. Accordingly, we overrule Rascon's second issue on appeal.

IV. *This Court's Ruling*

We affirm the judgment of the trial court.


W. STACY TROTTER

JUSTICE


October 19, 2023

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.