**Opinion filed January 31, 2019**



In The

# Eleventh Court of Appeals

_____

## No. 11-16-00282-CV

_____

### RONALD KEITH MOORE, Appellant

### V.

### ZUZANNA E. MOORE, Appellee

**On Appeal from the County Court at Law No. 2**
**Midland County, Texas**
**Trial Court Cause No. FM-43,005**

### O P I N I O N

The trial court denied Ronald Keith Moore's petition to clarify a prior divorce decree, and it granted Zuzanna E. Moore's motion to enforce that decree. In this appeal, Appellant complains of both of those rulings. We affirm.

Appellant and Appellee were divorced on June 29, 2005, in Midland County. Appellee was represented by an attorney, but Appellant executed a waiver of citation, did not hire a lawyer, and did not appear at the final hearing. The Final Decree of Divorce contains an erroneous statement that, although he was duly and

properly cited, Appellant "did not appear and wholly made default." In the decree, the trial court divided the "oil, gas or other minerals . . . standing in the name of the parties or either party" equally between Appellant and Appellee as part of "a just and right division of the parties' marital estate." The decree did not contain a listing of any specific oil and gas interests, nor did it contain an award of any specific oil and gas interests to Appellant as his separate property.

After the trial court entered the decree of divorce, Appellant filed a motion for new trial, and the trial court denied it. Appellant did not appeal the divorce decree.

Appellee testified that she discovered Appellant's oil and gas interests in 2013 through online research. Appellee contacted the producers of oil and gas from the properties and instructed them to pay half of all revenue from those interests directly to her. Subsequently, Appellant received division orders in which the producers allocated 50% of Appellant's interest in the oil and gas production payments to Appellee.

After Appellant received the division orders, he filed a "Petition for Clarification of Prior Order and Request for Temporary Restraining Order" in the trial court. In the petition, Appellant stated that, "[s]ince the date of the decree, a dispute has arisen . . . concerning the construction and interpretation of these provisions." Appellant requested that the trial court enter "a clarifying order that confirms these separate property interests as [Appellant's] sole and separate property."

Appellee filed an answer and argued that the decree "clearly awards" her 50% of Appellant's oil, gas, and other mineral interests and that, since Appellant had failed, at the time of the divorce, to establish that the interests were his separate property, she was entitled to half of all his mineral interests. Several months later, Appellee also filed a motion to enforce the decree. In that motion, Appellee asserted

2

that Appellant "fraudulently and willfully withheld the identity of property" subject to the Final Decree of Divorce that "rightfully belongs to her."

Appellant raised numerous arguments in the trial court, including estoppel, laches, statute of limitations, waiver, and adverse possession. After a hearing, the trial court denied Appellant's petition for clarification. In that order, the trial court noted that the "Final Decree of Divorce controls the rights of [Appellee] and [Appellant] to the community property." Appellant moved for a new trial, and the trial court denied it.

A few months later, the trial court held a hearing on Appellee's motion to enforce the decree. At the conclusion of the hearing, the trial court ruled in favor of Appellee. The trial court entered an order by which it granted Appellee's motion to enforce. In its order, the trial court provided as follows:

> The Court finds that the Motion to Enforce Final Decree of Divorce should be GRANTED.
>
> IT IS THEREFORE ORDERED that Respondent, RONALD KEITH MOORE, **execute all Mineral Deeds** necessary to transfer to Zuzanna Moore 50% of the oil, gas and other minerals, whether mineral interest, royalty interest or overriding royalty interest, wherever located, standing in the name of the parties, or either party, on June 29, 2005 as provided in the Final Decree of Divorce within thirty (30) days of this ORDER; and
>
> IT IS FURTHER ORDERED that Respondent, RONALD KEITH MOORE, **pay** . . . to Petitioner, ZUZANNA E. MOORE, as damages caused by the Respondent's failure to comply with the Final Decree of Divorce [the following sums]:
>
>> One half of the royalties paid solely to Respondent from community property from and after June 29, 2005 less all offsets and credits . . . ,
>>
>> One half of the sales proceeds from the sale of community mineral property in 2013 . . . .

3

The trial court further ordered Appellant to pay prejudgment interest and attorney's fees. Appellant filed a notice of appeal from the trial court's denial of his motion for clarification and an amended notice of appeal to include the trial court's order by which it granted Appellee's motion to enforce.

Appellant brings five issues on appeal. In all five issues, Appellant essentially addresses the question of whether the trial court erred when it granted Appellee's motion to enforce. We review a trial court's ruling on a motion for clarification or enforcement of a divorce decree under an abuse of discretion standard. *See Woody v. Woody*, 429 S.W.3d 792, 797 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *Morales v. Rice*, 388 S.W.3d 376, 381 (Tex. App.—El Paso 2012, no pet.); *Murray v. Murray*, 276 S.W.3d 138, 143 (Tex. App.—Fort Worth 2008, pet. dism'd). The test for abuse of discretion is whether the trial court acted in an arbitrary and unreasonable manner or whether it acted without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). The mere fact that a trial court may decide a matter within its discretionary authority in a different manner than the appellate court in a similar circumstance does not demonstrate that an abuse of discretion occurred. *Id.* at 242. We must affirm the judgment of the trial court on any legal theory that finds support in the evidence. *In re W.E.R.*, 669 S.W.2d 716, 717 (Tex. 1984).

"In family law cases, the traditional sufficiency standard of review overlaps with the abuse of discretion standard of review; therefore, legal and factual insufficiency are not independent grounds of error but are relevant factors in our assessment of whether the trial court abused its discretion." *Sink v. Sink*, 364 S.W.3d 340, 344 (Tex. App.—Dallas 2012, no pet.); *see Boyd v. Boyd*, 131 S.W.3d 605, 611 (Tex. App.—Fort Worth 2004, no pet.). When legal sufficiency is challenged, we must determine whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *City of Keller v. Wilson*, 168

S.W.3d 802, 827 (Tex. 2005). We review the evidence in the light most favorable to the verdict, crediting favorable evidence if a reasonable factfinder could and disregarding any contrary evidence unless a reasonable factfinder could not. *Id.* at 821–22. A legal sufficiency or "no evidence" challenge will be sustained if the party suffering the adverse decision at trial shows one of the following: (1) the complete absence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact. *Id.* at 810 (citing Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 TEX. L. REV. 361, 362–63 (1960)). When a party attacks the legal sufficiency of an adverse finding on an issue on which that party had the burden of proof, the party must demonstrate on appeal that the evidence conclusively establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001).

To analyze a factual sufficiency challenge, we must consider and weigh all the evidence and determine whether the evidence in support of a finding is so weak as to be clearly wrong and unjust or whether the finding is so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *Id.* at 242; *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986); *In re King's Estate*, 244 S.W.2d 660, 661 (Tex. 1951).

In Appellant's first issue, he argues that the trial court erred when it granted Appellee's requested relief because her claims were barred by statutes of limitations. Appellant argues in his brief that the "statute of limitations to foreclose a lien on real property and for fraud is four (4) years." *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 16.004(a), 16.035 (West 2002). Appellant also cites the residual limitations period in Section 16.051 of the Texas Civil Practice and Remedies Code: "Every action for which there is no express limitations period, except an action for the

recovery of real property, must be brought not later than four years after the day the cause of action accrues." *Id.* § 16.051 (West 2015).

Conversely, Appellee argues that "this is not an action to enforce a lien, but an action to enforce a final judgment." We agree. Appellant's appeal is from the order granting Appellee's motion to enforce, not from an order to foreclose on a lien on real property. Further, Appellee did not bring an independent cause of action for fraud against Appellant; rather, she argued that the trial court should order enforcement of the Final Decree of Divorce because Appellant fraudulently concealed the subject mineral interests. Therefore, we look to the rules governing motions for enforcement to see whether Appellee's claims were barred by any statute of limitation.

Chapter 9 of the Texas Family Code relates to post-decree proceedings. *See* TEX. FAM. CODE ANN. §§ 9.001–.302 (West 2006 & Supp. 2018). Under Section 9.002 of the Family Code, a trial court that renders a decree of divorce retains the power to enforce property divisions that are contained in the decree. *Id.* § 9.002. Section 9.003 provides that a party who wants to enforce the division of tangible personal property must seek to do so within two years from the date that the right to the property matures or the decree becomes final. *Id.* § 9.003. However, there is no such limitation in Chapter 9 for suits involving the division of real property—which includes the division of oil, gas, and other mineral interests. *See id.* §§ 9.001–.302.

When we construe a statute, our primary objective is to determine and give effect to the legislature's intent. *McIntyre v. Ramirez*, 109 S.W.3d 741, 745 (Tex. 2003); *see* TEX. GOV'T CODE ANN. § 312.005 (West 2013). We start with the plain and common meaning of the statute's words. *See State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). If the statute's language is unambiguous, we must interpret it according to its plain meaning, giving meaning to the language consistent with other

provisions in the statute. *See TGS–NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011). We must read the statute as a whole, not just isolated portions. *Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 642 (Tex. 2004). We should give effect to every sentence, clause, and word of a statute so that no part will be rendered superfluous. *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 29 (Tex. 2003) (citing *Spence v. Fenchler*, 180 S.W. 597, 601 (Tex. 1915)). We presume that the legislature chooses the language of a statute carefully, purposefully choosing each word that it includes and purposefully omitting words that it did not include. *TGS–NOPEC*, 340 S.W.3d at 439.

We believe it to be significant that the legislature did not include provisions in Chapter 9 of the Family Code that limit the time within which a party must seek to enforce the division of real property. Because we presume that the legislature carefully chose the language in the Family Code and that it purposefully omitted such a restriction, we hold that the trial court had jurisdiction to hear and decide Appellee's motion to enforce. *See id.* We overrule Appellant's first issue on appeal.

Appellant maintains in his second issue on appeal that Appellee's claims were barred by the doctrines of waiver, estoppel, and laches. Waiver is an affirmative defense that can be asserted against a party who intentionally relinquishes a known right or engages in intentional conduct inconsistent with claiming that right. *Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 643 (Tex. 1996). Waiver is largely an issue of intent. *Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003). A party may establish an implied waiver through a party's actions, but the surrounding facts and circumstances must clearly demonstrate an intent to waive the right. *Id.* Waiver is ordinarily a question of fact. *Id.* When the facts and circumstances are undisputed, however, the question is one of law. *Id.* at 156–57.

Appellant argues that Appellee waived her claims to the mineral interests because she had "actual and/or constructive" notice of the existence of those interests

7

but took no action to claim them. Therefore, Appellant argues, he can assert "the affirmative defense of waiver as a matter of law at least until the date [Appellee] made her claim known to him in 2012." Appellant stated at the hearing on Appellee's motion to enforce that, during the evening on the day of the final divorce hearing, Appellee told him that she "didn't go after" his inherited mineral interests. However, Appellee testified that she had no recollection of any such statement. Appellee also stated in her affidavit that, at the time of the divorce hearing, she was not aware of the extent of Appellant's property interests.

The record contains evidence to show that Appellee did not know about the subject mineral interests until almost a decade after the divorce. Appellee testified that, after she discovered the existence of the mineral interests, she met with multiple attorneys, hired a professional to search the property records, asked oil and gas producers to issue new division orders to reflect her claimed interests, and filed her motion to enforce. The evidence does not clearly demonstrate that Appellee intended to relinquish or forgo her right to receive 50% of Appellant's mineral interests. Rather than demonstrate waiver, the evidence supports Appellee's position that she intended to claim her rights to the mineral interests. The record supports the trial court's conclusion that Appellant failed to establish the affirmative defense of waiver. *See Jernigan*, 111 S.W.3d at 156; *Vessels v. Anschutz Corp.*, 823 S.W.2d 762, 765 (Tex. App.—Texarkana 1992, no writ).

Appellant has not shown that Appellee is estopped to make a claim for the interests in dispute. The party relying on estoppel has the burden of proof, and the failure to prove any of the elements is fatal. *Dempsey v. Apache Shores Prop. Owners Ass'n*, 737 S.W.2d 589, 596 (Tex. App.—Austin 1987, no writ). The elements of estoppel are as follows: (1) false misrepresentation or concealment of material facts; (2) made with actual or constructive knowledge of the facts; (3) to a party without knowledge or the means to obtain knowledge of the real facts;

8

(4) made with the intention that such misrepresentation or concealment should be acted upon; and (5) the party to whom it was made must have relied upon or acted upon it to his detriment. *Id.* at 595–96. Appellant has not set forth any arguments in his brief that show how Appellee's actions satisfy any of the five elements of estoppel. Furthermore, based on this court's review of the record, we hold that the trial court could have concluded that Appellant did not meet his burden of proof on the issue of estoppel.

Appellant argues that he is entitled to the defense of laches. Laches, like estoppel and waiver, is an affirmative defense that must be proved by the party who asserts it. *City of Fort Worth v. Johnson*, 388 S.W.2d 400, 403 (Tex. 1964). There are two essential elements of laches: (1) an unreasonable delay caused by someone asserting legal or equitable rights and (2) a good-faith change in position by the party asserting laches because of the delay. *Id.*

Appellant asserts that Appellee unreasonably delayed the assertion of her claims to the mineral interests. However, the record reflects that Appellee initiated her lawsuit within two years after she discovered the existence of the mineral interests. As we have noted, during that time, she actively researched her claims, hired lawyers, and obtained the appropriate division orders. Thus, there is sufficient evidence to support a finding that Appellee did not unreasonably delay the assertion of her claims. Because the trial court could have found that Appellant did not prove the first element of laches, we hold that the trial court did not err when it concluded that Appellant failed to establish the defense of laches. We overrule Appellant's second issue on appeal.

In his third issue on appeal, Appellant asserts that the trial court erred when it granted Appellee's motion to enforce because the mineral interests at issue were always Appellant's separate property. Appellant notes that, in the Final Decree of Divorce, the trial court did not explicitly address the separate property of either party.

9

Appellant takes the position that we should reverse the trial court's order so as not to "divest [Appellant] of his separate property." Appellee contends, however, that, because Appellant did not prove the separate property nature of the mineral interests at the time of the divorce, the trial court correctly enforced the division of the mineral interests.

The Texas Supreme Court addressed a similar issue in *Pearson v. Fillingim*, 332 S.W.3d 361 (Tex. 2011). The issue in that case was "whether the trial court impermissibly reclassified an asset originally divided" almost twenty-five years earlier in the divorce decree. 332 S.W.3d at 362. Dan Fillingim argued that his ex-wife, Rita Pearson, had no claim to his mineral rights because they were his inherited, separate property. *Id.* Upon Dan's petition to clarify, the trial court determined that the mineral interests were his separate property, that the divorce decree contained no provisions for the partition of the separate property of the parties, and that Rita was improperly receiving royalties post-divorce. *Id.*

The supreme court held that the trial court erred because it lacked jurisdiction to alter the original divorce decree. *Id.* at 364. The court noted that "section 3.003 also codified the common-law proposition that '[p]roperty possessed by either spouse during or on dissolution of marriage is presumed to be community property.'" *Id.* at 363 (citing FAM. § 3.003(a); *Tarver v. Tarver*, 394 S.W.2d 780, 783 (Tex. 1965); *Wilson v. Wilson*, 201 S.W.2d 226, 227 (Tex. 1947)). Thus, a party who asserts that property is his separate property has the burden to rebut the presumption that the property is community property. *Id.* The party must trace and identify the property as separate property and must prove the classification by clear and convincing evidence. *Id.*; *see* FAM. § 3.003. The court further noted:

> [W]hether the mineral deeds were originally Dan's separate property or not, they were properly deemed community property when he failed to rebut the Family Code's presumption of community property in the original hearing. This is not a divestiture of separate property, but a

10

necessary classification of property as set by the community presumption. Even further, as this Court stressed in *Reiss v. Reiss*, "a court has jurisdiction to characterize community property—even if it does so incorrectly."

*Pearson*, 332 S.W.3d at 364 (citation omitted); *see Reiss v. Reiss*, 118 S.W.3d 439, 443 (Tex. 2003).

Prior to the divorce hearing, Appellant gave Appellee a list of his mineral interests, but Appellee later discovered that there were multiple interests that Appellant had not included on the list. Appellant did not attend the divorce hearing, and he did not appeal from the final decree. Because Appellant did not prove, in the divorce hearing, that the mineral interests in dispute were his separate property, he did not overcome the presumption that the mineral interests were community property.

In the decree, the trial court specifically awarded each party 50% of the oil, gas, and other minerals "standing in the name of the parties or either party" as part of its "just and right division of the parties' marital estate." Therefore, the decree clearly and unambiguously divided the mineral interests between Appellant and Appellee as part of its division of community property. The trial court lacked jurisdiction to hold otherwise and could not alter the original divorce decree. "To hold otherwise would undermine the finality of divorce decrees by opening them up to collateral attacks" and "undermine the Family Code's presumption that all property in the parties' possession is community." *Pearson*, 332 S.W.3d at 364. We overrule Appellant's third issue on appeal.

In his fourth issue on appeal, Appellant argues in the alternative that the trial court erred when it granted Appellee's motion to enforce because, even if the mineral interests were not his separate property, he had adversely possessed them. Possessory interests in the mineral estate, even a mineral estate that has been severed from the surface estate through an oil and gas lease, may be adversely possessed

11

under the various statutes of limitations. *Nat. Gas Pipeline Co. of Am. v. Pool*, 124 S.W.3d 188, 192–93 (Tex. 2003). However, nonpossessory interests, including royalty interests, are not subject to adverse possession. *Id.* at 192; *Sun Oil Co. (Del.) v. Madeley*, 626 S.W.2d 726, 733 n.6 (Tex. 1981); *Coates Energy Tr. v. Frost Nat'l Bank*, No. 04-11-00838-CV, 2012 WL 5984693, at *9 (Tex. App.—San Antonio Nov. 28, 2012, pet. denied) (mem. op.).

Under the Texas Civil Practice and Remedies Code, a party may bring suit to recover real property held by another person in peaceable and adverse possession under title or color of title within three, five, or ten years of the date the cause of action accrues. *See* CIV. PRAC. & REM. §§ 16.024 (three years), 16.025 (five years), 16.026 (ten years). To establish adverse possession, a party must show "an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person." *Id.* § 16.021(1). "Peaceable possession" is defined as "possession of real property that is continuous and is not interrupted by an adverse suit to recover the property." *Id.* § 16.021(3).

Appellee asserts that the mineral interests at issue in this case are all nonpossessory interests. In his brief, Appellant states that "the Inherited Minerals involve[d] originate as mineral interests that have been leased," but he does not assert that his interests are possessory interests. Instead, Appellant notes only that he held title to the interests in his name, paid taxes, and "claimed" the leases. In his testimony at the hearing on the motion to enforce, Appellant stated that he did not learn about some of the interests until a few years after they were deeded to him. He stated that, after he discovered those interests, he started to receive royalty payments and paid the applicable taxes and fees on them. In short, Appellant did not establish that his interests in the mineral properties were possessory interests. As such, he did

not meet his burden to show "an actual and visible appropriation" of the property. *See id.* § 16.021(1). We overrule Appellant's fourth issue.

In his fifth issue on appeal, Appellant summarily argues, again in the alternative, that the trial court erred because it "did not consider" any of his affirmative defenses. He additionally contends that "the award of attorneys' fees should be vacated in the event of any ruling in [Appellant's] favor." We disagree with Appellant's contention because, in its findings of fact and conclusions of law, the trial court specifically addressed, and therefore considered, each of Appellant's affirmative defenses. Furthermore, we decline Appellant's request to vacate the award of Appellee's attorney's fees because we have not entered any rulings in favor of Appellant. Accordingly, we overrule Appellant's fifth issue.

We affirm the orders of the trial court.

JIM R. WRIGHT
SENIOR CHIEF JUSTICE

January 31, 2019

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[1]

Willson, J., not participating.

---

[1]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.