**Opinion filed March 6, 2025**



In The

# Eleventh Court of Appeals

_____

## No. 11-23-00263-CV

_____

## IN THE INTEREST OF M.E.R. AND G.K.R., CHILDREN

**On Appeal from the 318th District Court**
**Midland County, Texas**
**Trial Court Cause No. FM68223**

### M E M O R A N D U M   O P I N I O N

Appellant Miguel Ramirez, the father of seven-year-old M.E.R. and five-year-old G.K.R., filed a petition to modify the parent-child relationship, seeking (1) modification of the geographic restriction on Appellee Kimberly Ramirez's exclusive right to designate the primary residence of their children and (2) to have his increased travel expenses allocated between the parties due to Kimberly's change of residence. Kimberly, the mother of the children, filed a counterpetition to modify the parent-child relationship, requesting that she be appointed sole managing conservator and that Miguel's visits with the children be supervised. The trial court

denied both petitions to modify. In four issues, Miguel challenges the trial court's order denying his requested modifications, arguing that (1) the trial court erred in concluding that Miguel did not show that circumstances have "materially or substantially changed" despite Kimberly's judicial admission; (2) alternatively, the trial court's finding that the distance between Midland and Houston "does not by itself constitute a material and substantial change" was against the overwhelming weight of the evidence and was clearly wrong and unjust; (3) the trial court abused its discretion by reaching the merits of and refusing Appellant's request to modify the geographic restriction; and (4) the trial court "erroneously denied Miguel's claims for reimbursement" for travel costs. We affirm.

*Factual and Procedural History*

Miguel filed his petition to modify the parent-child relationship on July 19, 2023. Miguel sought to narrow the previous state-wide geographic restriction for the children's residence to only Midland County or, alternatively, to request modification "in a manner that the [trial court] deems is in the best interest of the children." Miguel also sought to have his increased travel expenses allocated between the parties due to Kimberly's change of residence. Kimberly filed her counterpetition to modify the parent-child relationship on October 10, 2023. Kimberly sought appointment as the children's sole managing conservator and requested that Miguel be appointed as possessory conservator of the children with supervised visitations. Both parties generally alleged that "[t]he circumstances of the children, a conservator, or other party affected by the order" had materially and substantially changed since the rendition of the order—a divorce decree that was signed and entered after a jury trial on the issue of conservatorship. The trial court held a single-day bench trial on the petitions, and the following evidence was presented.

Kimberly testified that she was recently promoted to lead global projects advisor for Chevron and now resided in Houston. Kimberly explained that she had spent her entire career working with Chevron, beginning as a contractor in 2007. Between November 2020 and June 2023, Kimberly was an operations lead for Chevron in Midland. According to Kimberly, when she and Miguel first moved to Midland due to her work with Chevron, they discussed that the move was likely temporary, and that they would likely be moving to Houston next. Kimberly notified Miguel of her pending move to Houston in July through a notice to the trial court. She moved into her home in Houston August 4, 2023. Kimberly's promotion provided her the ability to work on a hybrid schedule, generally requiring her to be in the office Tuesday through Thursday and work from home on Monday and Friday. Kimberly explained that she was not able to negotiate working remotely from Midland in her new position because she "need[ed] to be connected to the leadership of [the] business unit in Houston."

According to Kimberly, the children suffered from "standard airborne allergies," but nothing more, other than experiencing chronic ear infections in the past. M.E.R. and G.K.R. lived in Midland for about four and one-half years before Kimberly moved to Houston with them. Since Kimberly's move, Miguel had been picking up the children on Saturdays for his visits and returning them to Kimberly on Sundays. Miguel picked them up on Friday on one occasion. Prior to the move, Miguel would generally "exercise every Thursday night visitation." Kimberly explained that the children "come back aggressive and in not a great state" after their visits with Miguel.

Kimberly testified that she requested that Miguel be appointed possessory conservator with supervised visitations because he placed the children into therapy immediately after receiving her notice of promotion, and she believes Miguel fabricated allegations of sexual abuse against the children by her stepfather.

3

According to Kimberly, she only discovered that such allegations were made when investigators from the Department of Family and Protective Services showed up to her home several months later. Kimberly also requested that Miguel's visits be supervised because they had a negative impact on the children, beginning before her move, when teachers notified her that Fridays after Miguel's Thursday visits were "always a rough day."

Miguel testified that after notifying the children about the move to Houston, they exhibited signs of stress and anxiety, including, crying, hiding in the corner, and wetting the bed. That prompted Miguel to enroll the children in counseling. Miguel testified that he believed a geographic restriction limited to Midland County would be in the children's best interest and believed that was possible because Kimberly testified that she could work remotely. Miguel also testified that he could hire a full-time nanny.

Modupe Bajomo is a licensed professional counselor in Midland. Bajomo testified that she met with the children four times over a one-week period in July while they were in Miguel's care. Bajomo explained that G.K.R., who was four years old at the time, "expressed that he does not like his mother and he wants to stay with his father," and stated that he was "going to fight his mom." Bajomo testified that G.K.R. stated that he does not like to go with his mother because she does not give him enough candy and she tells him to go to bed instead of letting him watch television. While in Bajomo's playroom during a session, M.E.R. "said his grandfather had pretend touch [sic]."[1] Bajomo had no opinion on what is in the children's best interest regarding where they reside.

---

[1]Bajomo did not provide any further explanation as to what "pretend touch" entailed or when or where it would have occurred because M.E.R. "couldn't remember anything about it" and "[t]hat is all [M.E.R.] said."

Miguel testified that his entire family, except for his children, lived in Columbia. Miguel explained that he met Kimberly in California, she began interning with Chevron and then she was offered a job. The couple enrolled in "Chevron's mobile traveling family plan," moved to Pennsylvania, and then moved to Midland.

Prior to Kimberly and Miguel's divorce, Miguel was a stay-at-home father. Kimberly stated that the children did "[l]ots of different things" when they lived in Midland, including school, church, and extracurricular activities. Miguel testified that he now works full-time for AT&T, with optional overtime. Miguel purchased his own home to provide the children with a place close to their friends, school, parks, and doctors. Prior to Kimberly's move to Houston, Miguel played music with the children regularly in his home's music room. However, he has not been able to do so since the move.

Miguel testified that he had tried to discuss Kimberly's move with her but that she would not respond to him. Although Miguel has investigated the possibility of transferring to Houston, he explained that "Houston is a saturated market," and it would be up to two years before he would be eligible for transfer. Miguel confirmed that he is bilingual, has a college degree and has worked in law enforcement, teaching music, and as a real estate agent before becoming a stay-at-home father. Since the move, Miguel has not been able to spend as much time with the children. Now he drives from Midland to Houston Friday evening, picks the children up Saturday morning, and returns them on Sunday. According to Miguel, he spends approximately $1,000 per trip to Houston, although he did not provide any documentation regarding his expenditures. Although Miguel will now have possession of the children every spring break and over an extended summer visitation, he is no longer able to have lunch with the children at school on Thursdays nor exercise his usual Thursday evening visitation. Miguel explained that he "took

5

Thursdays off to spend the whole day with [the children] and the whole night and take them to school Friday mornings."

The trial court denied both parties' petitions for modification and issued findings of facts and conclusions of law.

*Standard of Review*

Because the trial court is vested with broad discretion in making decisions in suits to modify child custody, possession, and visitation, we review the trial court's decisions for an abuse of discretion. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *In re A.J.E.*, 372 S.W.3d 696, 698 (Tex. App.—Eastland 2012, no pet.); *see also In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007). A trial court abuses its discretion if it acts unreasonably, arbitrarily, or without reference to guiding principles or when it fails to correctly analyze or apply the law. *See J.A.J.*, 243 S.W.3d at 616; *A.J.E.*, 372 S.W.3d at 698.

"A trial court's findings of fact have the same force and dignity as a jury's answers to jury questions and are reviewable for legal and factual sufficiency of the evidence to support them by the same standards." *In re A.E.A.*, 406 S.W.3d 404, 414 (Tex. App.—Fort Worth 2013, no pet.). "Unchallenged findings of fact are binding on this Court unless the contrary is established as a matter of law or there is no evidence to support the finding." *In re H.N.T.*, 367 S.W.3d 901, 903 (Tex. App.—Dallas 2012, no pet.) (citing *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986)).

Legal and factual sufficiency challenges are not independent grounds of error in family law cases, but rather are factors that we use to determine whether the trial court abused its discretion. *In re E.R.D.*, 671 S.W.3d 682, 686–87 (Tex. App.—Eastland 2023, no pet.); *A.J.E.*, 372 S.W.3d at 698. In determining whether the trial court abused its discretion, we consider whether it had sufficient information upon which to exercise its discretion and, if so, whether it erred in the application of that

discretion.  *A.J.E.*, 372 S.W.3d at 698–99 (citing *In re T.D.C.*, 91 S.W.3d 865, 872 (Tex. App.—Fort Worth 2002, pet. denied)).  In conducting our analysis, the sufficiency-of-the-evidence review is part of the first inquiry.  *Id.* at 699.  After we evaluate the sufficiency of the evidence, we consider whether, based on that evidence, the trial court made a reasonable decision.  *Id.*

When a party attacks the legal sufficiency of an adverse finding on which he had the burden of proof, he must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of his proposed disposition. *In re T.K.D-H.*, 439 S.W.3d 473, 481 (Tex. App.—San Antonio 2014, no pet.) (citing *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam)); *see Moore v. Moore*, 568 S.W.3d 725, 730 (Tex. App.—Eastland 2019, no pet.).  A party challenging the factual sufficiency of an adverse finding on an issue on which it has the burden of proof must demonstrate on appeal that the evidence is so weak or the adverse finding "is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust."  *T.K.D-H.*, 439 S.W.3d at 482 (citing *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986)); *Dow Chem.*, 46 S.W.3d at 242; *Moore*, 568 S.W.3d at 730.

We are mindful that conservatorship determinations are "intensely fact driven," *Lenz v. Lenz*, 79 S.W.3d 10, 19 (Tex. 2002), and that "[t]he trial court is in a better position to determine what will be in the best interest of the child since it faced the parties and their witnesses, observed their demeanor, and had the opportunity to evaluate the claims made by each parent."  *In re J.R.D.*, 169 S.W.3d 740, 743 (Tex. App.—Austin 2005, pet. denied); *see also Pore v. Ellis*, No. 03-20-00550-CV, 2021 WL 5095496, at *3 (Tex. App.—Austin Nov. 3, 2021, no pet.) (mem. op.) ("A factfinder's decision on conflicts in the evidence is generally viewed as conclusive.").  Thus, a trial court does not abuse its discretion when it bases its decision on conflicting evidence so long as there is some substantive and probative

evidence that supports its decision. *E.R.D.*, 671 S.W.3d at 687; *In re J.H.C.*, No. 11-17-00187-CV, 2019 WL 2557542, at *6 (Tex. App.—Eastland June 20, 2019) (mem. op.); *In re A.J.E.*, 372 S.W.3d at 699.

*Geographic Restriction*

A. *Applicable Law*

A trial court may modify an order that provides for conservatorship, support, or possession of or access to children if the modification is in the children's best interest and the circumstances of a child or conservator have materially and substantially changed since the rendition of the order. TEX. FAM. CODE ANN. § 156.101(a)(1)(A) (West 2014); *see In re J.R.P.*, 526 S.W.3d 770, 778 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *see also In re L.T.M.*, No. 11-15-00311-CV, 2016 WL 7650555, at *2 (Tex. App.—Eastland Dec. 30, 2016, no pet.) (mem. op.) ("The party that wants the custody changed bears the burden to establish that both a material and substantial change in circumstances occurred and that the change is in the child's best interest."). With respect to the best interest of a child, no unique set of factors need be proved. *In re L.C.C.*, 667 S.W.3d 510, 513 (Tex. App.—Eastland 2023, pet. denied); *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). In fact, the trial court may consider a variety of factors in making its best interest determination. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). "Proof of best interest is not limited to [the *Holley*] factors,[2] nor do all factors always apply in every case." *In re S.A.H.*, 420 S.W.3d 911, 926 (Tex. App.—Houston [14th Dist.] 2014, no pet.). In other words, evidence of each *Holley* factor is not required

---

[2]The *Holley* factors include, but are not limited to the following: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley*, 544 S.W.2d at 371–72.

to support a best interest finding. *In re J.S.*, 687 S.W.3d 541, 547 (Tex. App.—Eastland 2024, no pet.). Although no single factor is controlling, evidence of a single factor may, in some instances, be sufficient to support the trial court's best-interest finding. *In re K.S.*, 420 S.W.3d 852, 855 (Tex. App.—Texarkana 2014, no pet.).

Consistent with Texas's public policy to ensure that children have frequent and continuing contact with fit parents, courts are permitted to impose geographic restrictions on the designation of a child's primary residence. *Guion v. Guion*, 597 S.W.3d 899, 908 (Tex. App.—Houston [1st Dist.] 2020, no pet.). However, while authorized to impose geographic restrictions, courts are not obligated to do so. *Id.* The Supreme Court of Texas identified a variety of factors to consider in a trial court's determination of a child's best interest when a parent seeks to relocate. *Lenz*, 79 S.W.3d at 14–16. Those factors include the (1) reasons for and against the move, (2) education, health, and leisure opportunities afforded by the move, (3) accommodation of the children's special needs or talents, (4) effect of extended family relationships, (5) effect on visitation and communication with the noncustodial parent, (6) noncustodial parent's ability to relocate, and (7) children's ages. *Id.*; *In re M.A.M.*, 346 S.W.3d 10, 15 (Tex. App.—Dallas 2011, pet. denied).

Whether a material and substantial change in circumstances has occurred is a fact-specific determination and must be made according to the circumstances as they arise. *In re A.L.E.*, 279 S.W.3d 424, 428 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (citing *Zeifman v. Michels*, 212 S.W.3d 582, 589, 593 (Tex. App.—Austin 2006, pet. denied)). Thus, the trial court is not bound by a rigid or definite set of guidelines. *Id.* Some changes that have been considered material include "(1) marriage of one of the parties, (2) poisoning of the child's mind by one of the parties, (3) change in the home surroundings, (4) mistreatment of the child by a parent or step-parent, or (5) a parent's [sic] becoming an improper person to exercise custody." *Id.* at 428–29.

B. *Analysis*

Even if we assume, without deciding, that either of Miguel's first or second issues regarding Kimberly's move and her alleged admission of a material and substantial change have merit, our conclusion as to his third issue is dispositive of this appeal: he cannot overcome the trial court's finding that modification is not in the children's best interest.[3] *See* FAM. § 156.101(a) (requiring both a material and substantial change and that the modification would be in the children's best interests); *J.R.P.*, 526 S.W.3d at 778.

In his third issue, Miguel argues that the trial court abused its discretion by declining to modify the geographic restrictions encompassed within Kimberly's right to designate the children's primary residence.

Miguel sweepingly argues that the trial court "erred in reaching the merits of the case because it had already concluded that there was no material and substantial change in circumstances." In other words, Miguel posits that the trial court was precluded from determining that the requested geographic restriction was not in the children's best interest because it had already determined that Kimberly's move did not constitute a material and substantial change in circumstances. However, Miguel provides no authority to support his argument and, likewise, we are unable to find any. Accordingly, we address whether the trial court abused its discretion by

---

[3]That Miguel would succeed on his first or second issues is less than certain. Although some of our sister courts have held that such a pleading constitutes a judicial admission, we have not had the occasion to consider it, and we do not do so now. *See, e.g.*, *In re V.K.H.H.*, 647 S.W.3d 476, 479 (Tex. App.—Texarkana 2022, no pet.); *A.E.A.*, 406 S.W.3d at 410. Moreover, based on the notice-pleading standard, we cannot be sure that Miguel and Kimberly alleged the same facts as a basis for their claims of a material and substantial change, as neither party specified the facts supporting their claim in their petition. *See Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 896 (Tex. 2000); *see also* TEX. R. CIV. P. 45, 47(a). By way of analogy, if both parties allege that a breach of contract occurred by the other party *but in different ways*, each has not necessarily judicially admitted that a breach of contract occurred, nor would they be alleviated from proving the particular breach alleged. Further, the fact that a parent has moved does not necessarily constitute a material and substantial change. *See Bates v. Tesar*, 81 S.W.3d 411, 430 (Tex. App.—El Paso 2002, no pet.); *see also In re E.M.,* No. 02-18-00351-CV, 2019 WL 2635565, at *7 (Tex. App.—Fort Worth June 27, 2019, no pet.) (mem. op.).

determining that it is not in the children's best interest to modify the geographical restriction of their primary residence.

We note that evidence of several of the *Holley* and *Lenz* factors is not set out in the record. *See Holley*, 544 S.W.2d at 371–72; *Lenz*, 79 S.W.3d at 14–16; *see also A.J.E.*, 372 S.W.3d at 698–99 (noting the first step in the review is to determine whether the trial court had sufficient information on which it based its decision). In this regard, no evidence was presented regarding whether the children possessed any exceptional or physical needs, whether the children were in any physical danger, whether there were programs available to assist either parent to promote the best interest of the children, whether any parent had any excuse for any acts or omissions indicating the parent-child relationship was not a proper one, the education, health, and leisure opportunities afforded by the move, accommodation of the children's special needs or talents, the effect of extended family relationships, or the desires of the children.[4] *See Holley*, 544 S.W.2d at 371–72; *Lenz*, 79 S.W.3d at 14–16. Accordingly, we cannot say that the trial court possessed sufficient information to grant Miguel's requested modification. *A.J.E.*, 372 S.W.3d at 698–99; *see also Coburn v. Moreland*, 433 S.W.3d 809, 827 (Tex. App.—Austin 2014, no pet.) ("The party seeking modification has the burden to establish these elements by a preponderance of the evidence."). We review the trial court's ruling based on the evidence available to it. *See, e.g.*, *J.S.*, 687 S.W.3d at 547.

---

[4]We note that Bajomo did testify that G.K.R. stated that he did not want to go with his mother because she did not give him enough candy and makes him go to bed instead of staying up to watch television. However, that information alone is insufficient to determine G.K.R.'s actual desires, let alone M.E.R.'s. *See In re A.C.*, 394 S.W.3d 633, 643 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (noting that a child too young to express their desires renders the first *Holley* factor neutral in the termination context); *see also In re M.M.M.*, No. 01-17-00980-CV, 2018 WL 1954178, at *16 (Tex. App.—Houston [1st Dist.] Apr. 26, 2018, pet. denied) (mem. op.) (noting that children ages one and four were too young too adequately express their desires in the termination of parental rights context). Additionally, many of the *Holley* factors do not apply in this case. *See S.A.H.*, 420 S.W.3d at 926 (noting that not every *Holley* factor will apply to every case).

11

As to the fifth *Lenz* factor, Miguel argues that the evidence weighs "heavily in favor of restricting the children's primary residence to Midland County, Texas," by contrasting his involvement with the children, their education, and extracurricular activities before the move to Houston, with his compelled reduction in involvement after the move. However, the trial court specifically found that Miguel's relationship with the children, including the nature and quantity of visits, did not support Miguel's requested modification. Miguel implicitly challenges this finding as factually and legally insufficient. *See In re L.A.F.*, 270 S.W.3d 735, 739 (Tex. App.—Dallas 2008, pet. denied). In this vein, Miguel is required to show that the evidence presented at trial establishes all the vital facts necessary for his proposed disposition as a matter of law. *See T.K.D-H.*, 439 S.W.3d at 481–82; *Dow Chem.*, 46 S.W.3d at 241–42. From the record before us, including the children's continued financial support and relationship with Kimberly, we cannot say that the evidence conclusively established that Miguel's requested geographical restriction to Midland County is in the children's best interest. *See T.K.D-H.*, 439 S.W.3d at 481–82; *see also J.H.C.*, 2019 WL 2557542, at *6 (noting that suit affecting the parent-child relationship (SAPCR) is intensely fact driven and that the trial court is in a better position to assess the witnesses' demeanor and thus credibility).

Moreover, the trial court found that the existing visitation provisions "adequately preserve[d] the relationship between [Miguel] and his children." *See Lenz*, 79 S.W.3d 14–16. Here, although Miguel testified that he did not get the children until Saturday morning due to travel time,[5] he testified that he previously took "all day Thursday" off to spend the day and night with the children—Miguel did not explain why he could not take Friday off for travel to see the children. *See*

---

[5]The record does not clarify whether Miguel exercised his weekend on the first, third, and fifth weekend of each month or one weekend per month, as provided in the standard possession order when conservators reside more than one hundred miles apart. *See* FAM. § 153.313(1).

12

*Dow Chem.*, 46 S.W.3d at 242; *Moore*, 568 S.W.3d at 730. Further, Miguel agreed that he would have every spring break and longer summer visitation due to the move. *See* FAM. § 153.313(2), (3).

As to the first *Lenz* factor, the trial court found that Kimberly had a good faith motive for the move and that her reasons supported the move while Miguel's opposition did not support his requested modification. *See Lenz*, 79 S.W.3d 14–16. Importantly, Miguel did not challenge this finding. Kimberly's expressed reasoning—a job promotion and pay raise—supports the trial court's finding. *See Lenz*, 79 S.W.3d 14–16. Similarly, Miguel did not challenge the trial court's finding regarding the sixth *Lenz* factor: that "[t]here was some evidence that [Miguel] could relocate to Houston, Texas." *See id.* As for the evidence supporting this factor, Miguel testified that he has a bachelor's degree, is bilingual, and previously worked in real estate, law enforcement, and teaching music. *See id.* Additionally, Miguel explained that he would be able to transfer to Houston with his current employer, although it may be up to two years before he is eligible. *See id.* Because there is evidence in the record to support this, we are bound by the trial court's finding of these facts to uphold its decision to deny Miguel's request for a modified geographical restriction. *See H.N.T.*, 367 S.W.3d at 903 (noting that we are bound by unchallenged findings of fact unless there is no evidence to support the finding).

Ultimately, reviewing the evidence in the record pursuant to the *Holley* and *Lenz* factors, Miguel did not demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of his proposed disposition or that the finding was against the great weight and preponderance of the evidence and thus clearly wrong and unjust. *See T.K.D-H.*, 439 S.W.3d at 481–82; *Dow Chem.*, 46 S.W.3d at 241–42; *Moore*, 568 S.W.3d at 730. And, because there is some evidence of a substantive and probative character that supports the trial court's decision, we

conclude that the trial court did not abuse its discretion when it denied Appellant's petition to modify. *E.R.D.*, 671 S.W.3d at 687. Appellant's third issue is overruled.

Because we affirm the trial court's denial of Miguel's motion to modify the geographical restriction on his third issue, which is determinative of his first two issues, we do not further address them here. *See* FAM. § 156.101(a) (requiring both a material and substantial change and that the modification would be in the children's best interests); *J.R.P.*, 526 S.W.3d at 778; *see also* TEX. R. APP. P. 47.1.

*Travel Expenses*

A. *Applicable Law*

"If a change of residence results in increased expenses for a party having possession of or access to a child, the court may render appropriate orders to allocate those increased expenses on a fair and equitable basis, taking into account the cause of the increased expenses and the best interest of the child." FAM. § 156.103(a); *see also In re M.U.C.O.*, No. 04-21-00280-CV, 2022 WL 3638255, at *8 (Tex. App.— San Antonio Aug. 24, 2022, no pet.) (mem. op.) (noting that the statute states that the trial court "may" render an order to allocate the expenses, thus granting the trial court "discretion to render orders allocating expenses on a fair and equitable basis in the best interest of the child"). "The payment of increased expenses by the party whose residence is changed is rebuttably presumed to be in the best interest of the child." FAM. § 156.103(b).

B. *Analysis*

In Miguel's fourth issue, he argues that the trial court erred by denying his request that his travel expenses for the visits be allocated between he and Kimberly. Miguel focuses on his testimony that each trip to Houston cost him about $1,000 and that "Kimberly offered no evidence to overcome the presumption under section 156.103[(b)]." However, Miguel does not address the trial court's finding that he "produced no credible evidence supporting his request to allocate increased

14

expenses" because his "testimony was not credible." *See T.K.D-H.*, 439 S.W.3d at 481–82; *Dow Chem.*, 46 S.W.3d at 241; *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (noting that an appellate court must defer to the factfinder's credibility determinations unless such finding is itself unreasonable). It is important to note that Miguel provided no documentary or itemized evidence corroborating his broad testimony that he spent $1,000 per trip to Houston. Without sufficiently specific evidence of Miguel's expenses, the trial court would not abuse its discretion in finding that it was without sufficient information to determine any increase in Miguel's net expenses. *See* FAM. § 156.103(a) (providing the trial court with discretion to allocate expenses *if* a change in residence results in increased expenses); *T.K.D-H.*, 439 S.W.3d at 481 ("The party seeking modification has the burden to establish these elements by a preponderance of the evidence."); *Coburn*, 433 S.W.3d at 829 (placing burden of proof on movant in a suit to modify child support). Moreover, without evidence of the specific amounts of Miguel's various claimed expenses, the trial court had no itemized amount to allocate between the parties. *See* FAM. § 156.103(a), (b); *T.K.D-H.*, 439 S.W.3d at 481–82 (setting out Appellant's burden on appeal for establishing legal and factual sufficiency on a matter for which he had the burden of proof).

Although there was insufficient evidence provided by Miguel for the trial court to reach the merits of his request, we note that the trial court found—and the evidence supports—that Miguel was paying significantly less than the guidelines establish for child support and that Miguel testified that he had the financial ability to hire a full-time nanny. *See* FAM. §156.103(a) (permitting the trial court to allocate increased expenses on a "fair and equitable basis"); *see also M.U.C.O.*, 2022 WL 3638255, at *8 (noting that the trial court has discretion on which to allocate expenses); *In re L.M.*, No. 02-17-00173-CV, 2018 WL 3154187, at *4 & n.7 (Tex. App.—Fort Worth June 28, 2018, no pet.) (mem. op.) ("When considering how to

15

allocate travel expenses, 'the trial court should consider the parties' financial situations to ensure that the travel expenses are not so great that they would prevent the proper support of the [child] by either party.'" (quoting *In re N.T.P.*, 402 S.W.3d 13, 22 (Tex. App.—San Antonio 2012, no pet.))).   Appellant's fourth issue is overruled.

*This Court's Ruling*

We affirm the order of the trial court.


W. BRUCE WILLIAMS

JUSTICE


March 6, 2025

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.